**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NUCAP INDUSTRIES INC. and NUCAP US INC., | |
| Plaintiffs, | Case No. |
| -against- | JURY TRIAL DEMANDED |
| ROBERT BOSCH LLC and BOSCH BRAKE COMPONENTS LLC, | |
| Defendants. | |

## COMPLAINT

Plaintiffs Nucap Industries Inc. ("Nucap Industries") and Nucap US Inc. ("Nucap US"; collectively with Nucap Industries, "Nucap"), for their Complaint against Defendants Robert Bosch LLC ("Robert Bosch") and Bosch Brake Components LLC ("Bosch Brake Components"; collectively with Robert Bosch, "Bosch"), allege as follows:

## NATURE OF THIS ACTION

1.      This action concerns Bosch's wrongful misappropriation of Nucap's library of confidential and proprietary drawings with tolerances and specifications ("drawings") for aftermarket brake components — the most comprehensive library in the world of aftermarket brake backing plates, shims, and other brake hardware (collectively, "brake components").

2.      There are hundreds of millions of vehicles on the road today that utilize disc braking systems on every wheel and every year hundreds of new vehicle types enter the market. Those disc braking systems include brake pads comprising metal backing plates (or brake plates) with attached "friction material" that contacts the wheel rotor when the brakes are activated. The brake pads also include shims made of dampening material attached on the side of the backing

plates opposite the friction material that minimize noise, vibration, and harshness ("NVH") during operation of the brakes.

3.     The brake pads also include brake hardware such as wear sensors, piston clips, and anti-rattle clips, and other small hardware components (collectively, "brake hardware"). Complete brake pad sets (*i.e.*, four brake pads) are ultimately provided to aftermarket distributors, as well as installers.

4.     Vehicles are designed to and do last for many years, and typically outlive their original factory-installed brake pads.  Accordingly, since brake pads are replaced several times throughout the vehicle's life, the aftermarket is the largest market segment in the brake component industry.

5.     Aftermarket brake component manufacturers require drawings to build tooling to manufacture the brake components required for the wide variety and large number of vehicles on the road.  The need for a library of drawings, including tolerances (*i.e.*, permissible variations), and the time and capital investment to develop the designs, drawings, and then the tooling, represents a significant barrier to entry to the brake component aftermarket.

6.     The development of drawings, including tolerances, is an extremely time consuming process, expensive, and in various aspects unique to the manufacturer. Determination of the specific tolerances is critical, unique to each manufacturer, and itself requires an investment in significant research and development ("R&D") and engineering.  The greater the depth and breadth of the library of component drawings, the more valuable the library is to the owner.

7.     Nucap Industries, a technology company founded in 1994, has invested millions of dollars and countless R&D and engineering hours to develop thousands of aftermarket brake

component drawings (and to determine the precise tolerances including fit and function specifications) and uses these drawings to build brake component tooling with a view to being able to produce brake components for most vehicle types in the aftermarket brake industry. Nucap invested additional millions in more R&D and testing to improve and develop a safer brake system.

8.      Nucap performs this R&D and testing at its state of the art facilities in Toronto, Canada and, to a lesser extent, at its facilities in Watertown and Wolcott, Connecticut.  In order to maintain its leadership role in the brake component aftermarket industry, Nucap begins designing brake components for each new vehicle introduced to the market as soon as possible after its introduction.  This requires a large upfront investment of time and money that does not generate revenue for a period of years and, in some cases, none at all.

9.      Nucap has significant experience in manufacturing brake components, a reputation for being a reliable and innovative manufacturer in the aftermarket industry, and continuously invests time and capital to maintain its status as the best brake component manufacturer in the aftermarket brake industry.  This is a priority for Nucap and results in continuous change and improvement.  Nucap designs and manufactures the highest quality and performance brake components in the aftermarket industry, and has received several industry awards recognizing its technological innovations.

10.      Bosch is a recent entrant to the aftermarket brake industry, and it relied heavily upon Nucap's expertise, investment, full range of brake components derived from Nucap's library of proprietary drawings, and technology to enter and gain market share faster in the industry.

11.     Bosch applied friction material to the Nucap-supplied backing plates and attached the Nucap-supplied corresponding shims and other brake hardware to complete the brake pads. Bosch then sold brake pad sets predominantly under other brands, such as Autozone's private label "Duralast®." Bosch also sold brake pad sets under its own name.

12.     Nucap supported Bosch every step of the way as Bosch entered and gained market share in the aftermarket brake industry. Nucap enabled Bosch to compete against more established aftermarket brake pad manufacturers and suppliers who already had significant customer bases and market share.

13.     Bosch reaped the benefits of Nucap's extensive library of proprietary drawings, advanced technologies, and innovative manufacturing processes. In order to gain a relationship with Bosch, Nucap acquired Connecticut-based Anstro Manufacturing Inc. (now Nucap US) and Shanghai-based Qualitor Vehicle Components (now Nucap Vehicle Components ("Nucap China")). Anstro and Qualitor Vehicle Components had an exclusive relationship with Bosch (previously Morse Automotive's brake pad business) for the supply of brake components. These entities also had an exclusive agreement with Trelleborg Rubore Inc. ("Trelleborg Rubore") which provided advanced shim materials. Nucap (and previously Anstro) co-developed and sourced advanced composite materials from Trelleborg Rubore ("Rubore Shim Composites") and had an exclusive agreement for the supply of those composites for brake components in North America.

14.     Nucap, in response to Bosch's demands, also allowed select pre-approved Bosch employees to access Nucap's extensive library of proprietary drawings — Nucap's crown jewel — which Bosch claimed was necessary to satisfy Bosch's quality control requirements. Bosch represented to Nucap that it would respect and safeguard the proprietary and confidential nature

of Nucap's information.  Nucap believed that Bosch would continue to work with Nucap to remain focused on safety and quality, and to continue to grow their businesses.  Bosch was Nucap's biggest customer and Nucap was Bosch's biggest supplier of brake components.  Nucap viewed Bosch as a trusted partner.

15.     Bosch breached the trust that Nucap had reposed in Bosch.  Unbeknownst to Nucap, on information and belief, Bosch engaged in a deliberate plan to move the supply of brake components from Nucap to other third-party manufacturers in China and potentially elsewhere.

16.     These low-cost manufacturers had not invested in R&D to develop libraries of brake component drawings, and did not otherwise have access to the drawings required to build the necessary tooling to manufacture quality brake components for a wide variety of vehicles, let alone components meeting the demanding specifications that Nucap met for Bosch.  This enabled Bosch to manufacture and supply the wide range of brake pads for vehicles in the aftermarket brake industry.

17.     These low-cost manufacturers also offer components at a lower price because, as compared to Nucap, they use lower quality materials, do not impose the same high quality control standards, and have not made the required investment to create libraries of detailed drawings to allow them to manufacture quality brake components.

18.     In short, on information and belief, Bosch sought to take Nucap's intellectual property and turn it over to low-cost manufacturers that would use Nucap's drawings and specifications to copy Nucap-designed brake components.  Furthermore, on information and belief, Bosch used Nucap's drawings and specifications to qualify other suppliers and approve their components.

19.     As part of its plan to steal Nucap's library of drawings, on information and belief, Bosch engaged in a campaign to copy Nucap's brake component drawings onto Bosch templates for the purpose of distributing them to low-cost manufacturers or to approve other suppliers' components. Bosch, on information and belief, has now turned over Nucap Drawings to these low-cost manufacturers.

20.     In addition, to gain access to the advanced steel-rubber composite materials that Nucap used for shims that it supplied to Bosch, Bosch deliberately interfered with Nucap's supply agreement with Trelleborg Rubore, which had remained in effect since Nucap's acquisition of Anstro Manufacturing Inc. Bosch was well aware of that agreement and yet demanded that Trelleborg Rubore breach its exclusive agreement with Nucap, to enter into an arrangement directly with Bosch, and to divert Rubore Shim Composites from Nucap's production facilities to Bosch's suppliers' production facilities.

21.     Bosch, in executing on this plan to first grow its business with Nucap and then replace Nucap with low-cost manufacturers using Nucap's drawings, has (i) misappropriated Nucap's trade secrets and other confidential information, (ii) directly and indirectly infringed Nucap's exclusive rights to reproduce, create derivative works from, and distribute Nucap's copyrighted component drawings in violation of 17 U.S.C. § 106(1), (2), and (3), (iii) tortiously interfered with Nucap's exclusive agreement with Trelleborg Rubore, (iv) engaged in unfair competition that violates basic standards of commercial morality, and (v) unjustly enriched itself to the detriment of Nucap in a manner that violates the fundamental principles of justice, equity, and good conscience.

22.     Bosch's wrongful actions have substantially damaged and irreparably harmed Nucap. As further described below, Nucap seeks (i) the impounding and destruction of all

copies of Nucap's drawings, (ii) an injunction against Bosch's further misappropriation of trade

secrets, copyright infringement, tortious interference, and unfair competition, (iii) an award of

actual damages caused to Nucap and Bosch's profits relating to its unlawful conduct,

(iv) punitive damages, and (v) attorneys' fees and costs.

## THE PARTIES

23.     Nucap Industries is a corporation organized and existing under the laws of

Ontario, Canada with its principal place of business at 3370 Pharmacy Avenue, Toronto,

Ontario, Canada.

24.      Nucap US is a corporation organized and existing under the laws of Connecticut

with its principal place of business in Wolcott, Connecticut.  Nucap US is an indirect wholly-

owned subsidiary of Nucap Industries.  Nucap US was formerly known as Anstro

Manufacturing Inc.

25.     Robert Bosch is a limited liability company organized under the laws of the State

of Delaware, with its principal place of business at 2800 South 25th Avenue, Broadview, Illinois.

Robert Bosch is a subsidiary of Robert Bosch GmbH, a limited liability company organized

under the laws of Germany and based in Stuttgart, Germany.

26.     Bosch Brake Components is a limited liability company organized under the laws

State of Delaware, with its principal place of business at 2800 South 25th Avenue, Broadview,

Illinois.  Bosch Brake Components is a subsidiary of Robert Bosch.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over the copyright claims in this case

pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has jurisdiction over the other claims

based on 28 U.S.C. §§ 1338(b), 1332(a), and 1367.

28.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

29.    This Court has personal jurisdiction over Robert Bosch and Bosch Brake

Components because both companies maintain their principal places of business in the State of

Illinois, both companies regularly, systematically, and continuously transact business within the

State of Illinois, and both companies committed wrongful acts alleged herein, and benefitted

from those acts, within the State of Illinois.

## FACTUAL BACKGROUND

### A.    Nucap is the Leader in the Aftermarket Brake Components Industry

30.    Nucap is a technology company founded in 1994 in Toronto, Canada.  Nucap has

focused its design and development efforts on brake components for the automotive, industrial,

aviation, motorcycle, and rail markets.

31.     Nucap originally focused on brake "shoes" for drum braking systems, but rapidly

expanded into the design and manufacture of components for disc braking systems, including

backing plates, Nucap's own proprietary brake shims, and brake hardware.  Backing plates are

the steel backing to which friction material is added to form brake pads.  Brake shims are

relatively thin components made of rubber, metal, or composite material that are attached on the

side of the brake plates opposite the friction material.  The function of the brake shim is to

correct minor imperfections that can result in NVH when the piston pushes the brake pad against

the rotor when the brake is depressed.  The brake hardware that completes the brake pads

includes wear sensors, piston clips, anti-rattle clips, plus other small hardware components.

32.    Nucap was founded by a team with decades of experience in the aftermarket

brake industry, some dating back to the early 1970s, including both the design and the

manufacture of brake components.  This team brought their experience and expertise in all facets

of brake design and manufacture to Nucap and set out to build the world's preeminent

aftermarket brake component company — a company headquartered in Toronto, Canada that designs and manufactures safe and high performance quality backing plates, shims, and other brake components.

33.     By January 1996, Nucap had designed and begun to manufacture aftermarket backing plates, shims, and other brake components.  Nucap, over the years, has incorporated numerous different pioneering technologies into its brake components.  Nucap's pioneering technologies include the following:  (i) Nucap Retention System ("NRS") that prevents edge lift (or "rust jacking") of brake pads by creating a mechanical bond between the backing material and the friction material; (ii) Step Chamfer Technology for backing plates that reduces weight, increases efficiency, and reduces costs; and (iii) Nu-Lock Independent Floating Shim Technology that increases shim integrity and results in superior noise reduction (*i.e.*, improved NVH).

34.     As Nucap continued to expand its design and manufacture of brake components, and to introduce these innovative technologies, Nucap has always remained primarily focused on safety.  Nucap has always been, and remains, an industry leader in safety, and committed to using the highest quality materials in its components.  Nucap has not sought short term cost savings such as the use of inferior quality materials (at any of its locations, including Nucap China), but has instead focused on innovative cost savings through improved design, better technology, and superior manufacturing processes.  Nucap's innovative manufacturing processes include Nucap's FineblankPlus stamping process and NRS mold ready technology.

35.     Nucap has also continued to expand its operations over the years.  Nucap remains headquartered in Toronto, Canada, where it has R&D, testing, and manufacturing facilities. Through an acquisition in 2006, Nucap expanded into Europe by acquiring operations in Arazuri,

Spain.  In 2009, Nucap acquired Anstro Manufacturing Inc. (now Nucap US), a backing plate

and shim designer and manufacturer based in Watertown and Wolcott, Connecticut.  Nucap US

continues to operate at Anstro's original facilities in Watertown and Wolcott, Connecticut.  As

part of the same transaction in 2009, Nucap acquired Qualitor Vehicle Components (now Nucap

China) based in Shanghai, China, which primarily supported Bosch's needs in China.  Nucap has

invested millions to retool this manufacturing facility with cutting-edge technology.

36.     Nucap, over the years, has made brake components for the original equipment

("OE") market (factory-installed braking assemblies) and the aftermarket.  Nucap has worked in

some capacity with every major brake technology OE manufacturer in the world.  Nucap

continues to work with OE manufacturers, but has shifted its business focus to the aftermarket

where it can devote its resources to identifying and addressing the issues that may cause brake

failures and safety problems across a variety of brake assemblies in different vehicles made by

different manufacturers.  Nucap, by investing in this R&D, is able to continue to improve on its

designs and to manufacture cutting-edge backing plates and shims.

37.     Nucap has received numerous awards over the years recognizing its contributions

to brake technology and, in turn, vehicle safety.  In 2001, Nucap won the prestigious PACE 2001

Award for Innovation in Manufacturing Process, for its NRS technology, which was recognized

as a compelling example of an innovative solution to an unsatisfactory but accepted process in

the automotive industry.  From 2005-2009, Nucap was awarded Automotive Communication

Council awards for Nucap's NRS and other technologies.  In 2011, Undercar Digest awarded

Nucap a Top 10 Products award.  Nucap also holds more than 80 patents worldwide concerning

brake components and related technologies.

### B.    Nucap's Design and Manufacture of Aftermarket Brake Components

38.    Nucap's brake components are designed and tested at Nucap's Toronto headquarters where Nucap has an engineering team dedicated full time to this development. Nucap's engineering team has a total of more than 300 years of experience designing brake components. Nucap, through its acquisition of Anstro Manufacturing Inc., also has numerous designs that were created by engineers based in Connecticut.

39.    Nucap's engineers carefully analyze original factory-installed disc braking assemblies. Nucap, through years of effort, has gathered the original factory-installed disc braking assemblies for more than 1,500 different makes and models of vehicles. Based on their careful analysis of these braking assemblies and their years of experience, Nucap engineers create prototype backing plates that are subjected to rigorous safety, quality, and performance testing at Nucap's testing facilities. Based on testing, Nucap engineers carefully refine the backing plate design, determine the material specifications and specific tolerances that are required for manufacturing and for fit and function in the brake caliper, create updated prototypes, and subject the updated prototypes to the same rigorous testing. Nucap's engineers ultimately end up with a unique final backing plate design. This final design and drawing forms the foundation for the blueprint used to build the production tooling to manufacture the backing plates.

40.    Nucap's shims are based on its own proprietary designs. As with the backing plates, Nucap's engineers create prototype shims that are subjected to extensive safety, quality, and performance testing at Nucap's testing facilities, refine those designs based on the testing, and continue that iterative process until they have arrived at a final initial shim design that is specifically engineered for its corresponding backing plate. Nucap also carefully selects the most advanced materials to be used in its shims. The design and material work together to best

improve the NVH characteristics of the brake pads. Nucap's engineers ultimately end up with a unique final shim design. This final design and drawing forms the foundation for the blueprints used to build the production tooling used to manufacture the shims.

41.     Nucap's engineers also carefully analyze all brake hardware that is part of the brake pads (*e.g.*, wear sensors and piston clips). Nucap's hardware designs include material specifications and specific tolerances that are required for manufacturing and for fit and function in the brake caliper.

42.     Nucap's engineers strive to remain years ahead in their development by working on aftermarket components for vehicles that have been recently introduced to the market even though the aftermarket for these parts may not generate significant revenue for a long amount of time, and sometimes not at all. Nucap's brake component drawings include material specifications and specific tolerances that are required for manufacturing, including the fit and function of the components in the brake assembly.

43.     Nucap's backing plate and shim drawings are created using computer-aided design ("CAD") software. The designs, as reflected in the CAD drawings, are continuously updated over the life of the vehicle for which they are intended in order to improve their safety, quality, and performance. The CAD drawings can be used to create the tooling necessary to manufacture the backing plates, shims, and other brake components. The CAD drawings reflect, *inter alia*, the shape of the component, the specific materials to be used for the component, the dimensions, and the specific tolerances (*i.e.*, permissible variations). The CAD drawings also reflect all engineering changes that have been made as Nucap's engineers have improved on the designs over the years. As a result, the CAD drawings are original and unique to Nucap.

44.     The Nucap brake component designs created in Toronto are referred to herein as "Nucap Canada Designs," the brake component designs created in Connecticut are referred to herein as the "Nucap US Designs," and collectively the Nucap Canada Designs and Nucap US Designs are referred to as the "Nucap Designs." The CAD drawings created in Toronto are referred to herein as "Nucap Canada Drawings," the CAD drawings created in Connecticut are referred to as the "Nucap US Drawings," and collectively the Nucap Canada Drawings and Nucap US Drawings are referred to as the "Nucap Drawings."

45.     The Nucap Designs, as expressed in the Nucap Drawings, reflect countless original and expressive determinations made by Nucap's engineers. The dimensions, tolerances, and materials at the very heart of the Nucap Designs and Nucap Drawings reflect the experience and expertise of Nucap's engineering team and the creative and expressive choices made by the engineers at every step of the design process.

46.     Even if a competitor's engineering team were to analyze the very same factory-installed brake assembly for the purpose of designing backing plates and shims, that competitor's team would not end up with the same dimensions, tolerances, and materials as Nucap, or the same shim designs. A competitors' drawings for brake components, including tolerances, would be different. The differences in drawings, including tolerances, represent Nucap's expertise, experience, and creativity and provide Nucap with a significant competitive edge over its competition. The differences are critical.

47.     Nucap Industries is the owner of all right and title to the Nucap Canada Designs and Nucap Canada Drawings, including all trade secret and other confidential information, all copyrights, and all other intellectual property embodied or reflected therein. Nucap US is the owner of all right and title to the Nucap US Designs and Nucap US Drawings, including all trade

secret and other confidential information, all copyrights, and all other intellectual property embodied or reflected therein. The Nucap Drawings are original works of authorship under 17 U.S.C. § 102(a) and Nucap Industries and Nucap US, pursuant to 35 U.S.C. § 106(1), (2), and (3), have the exclusive right to reproduce and distribute the Nucap Drawings, and to prepare derivative works based on the Nucap Drawings.

48. To ensure that the Nucap Drawings (reflecting the Nucap Designs) and Nucap's technologies are protected, Nucap builds the dies and tooling used to manufacture the brake components in house, and does not subcontract the build of dies and tooling to third parties. Nucap builds the necessary dies and tooling to manufacture all of its backing plates, shims, and hardware, manufactures these brake components, and then sells these brake components to its customers all around the world. Nucap's customers include brake pad manufacturers who apply friction material to the Nucap-designed and -produced backing plates and sell the complete brake pad sets (*i.e.*, four brake pads) under their own names, or to other parties under private labels.

49. Significantly, however, a competitor would not be able to recreate the Nucap Designs and Nucap Drawings through the attempted reverse engineering of Nucap's actual brake backing plates, shims, and hardware. A competitor would not be able to discern, on its own, the measurements and tolerances that were specified by Nucap's own expert engineering team.

### C. Nucap's Highly Confidential and Secure Brake Component Library

50. Over the past two decades, and at a significant cost and time commitment, Nucap has created an extensive library of drawings for a very wide range of brake components. Nucap has brake components for every major vehicle manufacturer, every major model, and each updated model year. Nucap has invested millions of dollars and countless engineering hours to designing these aftermarket brake components with a view to being able to produce these components for most vehicle varieties on the road.

51.     Nucap has the most comprehensive library in the world of brake component drawings.  Nucap currently has more than 10,000 brake component drawings.  These Nucap Drawings reflect designs for backing plates, shims, and hardware for thousands of different brake assemblies.  These Nucap Drawings are original and unique to Nucap.

52.     None of the Nucap Drawings (or the Nucap Designs reflected therein) are publicly available, and they are not generally available to others in the industry.  Rather, the Nucap Drawings (and Nucap Designs reflected therein) constitute Nucap's proprietary and highly confidential information.  Nucap allows access to the Nucap Drawings only on a "need to know" basis.  Nucap takes numerous affirmative steps to safeguard the secrecy of this information.  These affirmative steps, as further described below, include employee non-disclosure agreements and training, confidentiality legends, safeguarding and monitoring hardcopies in only secure locations, and safeguarding and monitoring access to electronic copies of the Nucap Drawings.

53.     All Nucap employees — regardless of their position — must execute a Non-Disclosure Agreement that provides, *inter alia*, that "you agree not to make any unauthorized use, publication, or disclosure, during or subsequent to employment by the Company, of any Confidential Information generated or acquired by you in the course of employment with the Company."  "Confidential Information" is broadly defined by the Non-Disclosure Agreement to include, *inter alia*, "all information related to developments, inventions, product designs, drawings and specifications, business concepts, hardware, design enhancements, [and] process know-how."

54.     Nucap employees receive training on the policies and procedures in place to handle Nucap trade secrets and confidential information.  Nucap also holds exit interviews with

those who are leaving Nucap and have had access to its trade secrets and confidential information, to ensure that they have not retained any trade secrets or confidential information, and to remind them of the obligations under the Non-Disclosure Agreement. In addition, departing engineers and employees are subject to contractual restrictions relating to subsequent work for customers or competitors.

55.     Nucap also employs other security measures to ensure the safety and security of its trade secrets and confidential information. Those measures include employee identification badges, employee access codes and keys, and security cameras.

56.     The Nucap Drawings also include clear and conspicuous legends confirming that the Nucap Drawings (and the Nucap Designs reflected therein) are Nucap's proprietary and confidential information, and that unauthorized use or disclosure is not permitted. Those confidentiality legends are in substantially the following form:

> THE DESIGN AND TECHNICAL INFORMATION APPEARING ON THIS DRAWING ARE THE PROPERTY OF NUCAP INDUSTRIES INC. AND IS DISCLOSED IN CONFIDENCE. IT IS NOT TO BE COPIED, REPRODUCED, REVEALED TO OR APPROPRIATED BY OTHERS, EITHER IN WHOLE OR IN PART WITHOUT PRIOR EXPRESS WRITTEN CONSENT OF NUCAP INDUSTRIES INC.

Nucap Drawings also generally bear a copyright notice.

57.     Access to hardcopies of the Nucap Drawings is restricted. Hardcopies of the Nucap Drawings are maintained only in secure areas at Nucap to which access is limited to necessary employees. Those employees who are authorized to access these areas must use keys or passcodes to identify themselves and gain entry. The drawings in those areas also are clearly marked as "CONFIDENTIAL" in a bright red legend. All visitors to Nucap's facility are required to identify themselves, sign in and out at registration, and are not allowed — without a

Nucap employee escort — to enter any of the restricted areas in which hardcopies of the Nucap Drawings may be kept.

58.     Nucap maintains electronic copies of the Nucap Drawings only on a secure server at its Toronto headquarters ("Nucap Engineering Database").  Access to the Nucap Engineering Database is limited to only specific approved Nucap engineers and employees.  Those engineers and employees who are authorized to access the Nucap Engineering Database are issued unique usernames and passcodes that are required for access.

D.     **Bosch Leverages Nucap's Proprietary and Confidential  Brake Component Library to Enter and Gain Share in the Aftermarket Brake Industry**

59.     Bosch is a multi-billion dollar company whose North American operations generally are divided among three main divisions:  (1) Automotive Technology; (2) Consumer Goods and Building Technology, and (3) Industrial Technology.  Bosch's Automotive Technology division is its largest, and its development and sale of braking assemblies and parts has changed over the years.

60.     Bosch was initially engaged in the foundational brake business, *i.e.*, Bosch designed and created complete factory-installed braking assemblies for OE manufacturers. Around 2009, Bosch sold its North American operations and exited the foundational brake business in North America.  A couple of years later, in 2012, Bosch sold its remaining global foundational brake business.

61.     As Bosch was exiting this business, Bosch was entering — for the first time — the aftermarket brake industry.  Bosch's first foray into the aftermarket brake industry was its acquisition of Morse Automotive Corporation's ("Morse") brake pad business in late 2008. Bosch, through the acquisition of Morse's brake pad business, acquired operations in the U.S., Mexico, and China.  Robert Bosch, following its acquisition of Morse's brake pad business,

formed a new Braking Systems business unit and formed Bosch Brake Components, a subsidiary responsible for Bosch's Braking Systems business.

62.     Morse was a long-time customer of Nucap US (previously Anstro Manufacturing Inc.) and Nucap China (previously Qualitor Vehicle Components), dating back to the early 1990s.  Morse bought brake components from Anstro Manufacturing Inc., Nucap, and other suppliers, added friction material, and sold the complete brake pad sets to its customers. Shortly after Bosch's acquisition of Morse, Nucap expanded and retooled the Nucap China facilities to that it could supply Bosch with a full portfolio of backing plates, shims, and other brake components.

63.     Bosch, on information and belief, did not retain a critical core of experienced engineers from its North American foundational braking business to help with its entry into the aftermarket brake industry.  Bosch relied heavily on Nucap for support in that regard.  Nucap worked closely with Bosch and supplied Bosch with the majority of Bosch's required brake components.  Nucap's extensive brake component library, and innovative and pioneering technologies, provided Bosch with a competitive edge and helped Bosch penetrate and take market share from more established aftermarket competitors.

64.     Over the course of just a few years, and relying on Nucap's proprietary technology, Bosch became an established player in the aftermarket for brake pads.  Bosch has sold, and continues to sell, brake pads under its own name, and also under private labels such as Autozone's "Duralast®."

**E.      Bosch Misappropriates Nucap's Proprietary Brake Component Drawings and Turns them Over to Low-Cost Manufacturers**

65.     Bosch, over the course of the relationship between Nucap and Bosch, repeatedly insisted and demanded that its engineers be given access to the Nucap Engineering Database.

Bosch told Nucap that it required access to the Nucap Drawings for quality control requirements. Bosch represented to Nucap that it would respect and safeguard the proprietary and confidential nature of the Nucap Drawings.

66.     Nucap ultimately granted certain Bosch employees limited access to the Nucap Engineering Database.  Nucap did not, however, issue general credentials or simply provide Bosch with access for a given number of employees.  Rather, Nucap granted access only to certain Bosch employees who allegedly had a critical "need to know" requirement who were identified by Bosch to Nucap, and who were specifically approved by Nucap.  Nucap would then issue unique and secure usernames and passwords to those identified and approved Bosch employees.  Nucap also regularly de-authorized all persons who had been granted access to the Nucap Engineering Database to ensure that the list remained current, and required that individuals reapply to access the database.

67.     Nucap granted this access to the specific authorized Bosch employees on the condition that Bosch would use the Nucap Drawings solely for its own internal purposes and would not disclose the Nucap Drawings to any third party.  Nucap also required that Bosch maintain the confidentiality legends and copyright notices that appeared on the Nucap Drawings. Bosch understood that Nucap's brake component drawings were proprietary, confidential, and copyrighted, and agreed to these conditions.

68.     In addition, the Senior Managing Engineer and at least six other engineers at Bosch's China facility — including the Product Engineering Supervisor, the Senior Product Engineer, and several Product Engineers — executed Nucap's Terms of Use before being granted access to Nucap's Engineering Database.  The Nucap Terms of Use provided, *inter alia*, that Bosch's engineers:

- "must retain all copies of all Materials [*i.e.*, party prints, drawings, screen shots, and text], all copyright, trademark and other proprietary notices contained in the Materials";

- "may not modify, reproduce, distribute, display, sell, alter, perform, or otherwise use the Materials in any manner whatsoever";

- "must not transfer the Materials to any other person without NUCAP's written consent";

- "agree to comply with all applicable copyright law in your use of the Materials and to prevent unauthorized copying or use of the Materials"; and

- "acknowledge that by providing you the Materials, you do not obtain any ownership right, license, title, or other interest in the materials."

69.     In short, Bosch (through specific authorized employees) acquired access to the Nucap Drawings (including the Nucap Designs thereon) under circumstances that clearly gave rise to a duty to maintain the secrecy of the Nucap Drawings.  Nucap at no time authorized Bosch to reproduce or use the Nucap Drawings for any purpose other than quality control.  Nucap at no time authorized Bosch to reproduce the Nucap Drawings for the purpose of distributing them outside of Bosch, or consented to the distribution of the Nucap Drawings, or any derivative works, outside of Bosch.  Nucap at no time authorized Bosch to reveal any of the details of the Nucap Designs to any third party — or even to those inside Bosch who were not authorized to access the Nucap Engineering Database.

70.     Bosch's access to the Nucap Engineering Database was fairly steady for the first few years, but increased substantially over the past few years.  Indeed, Bosch engineer log-ins to Nucap's Engineering Database increased nearly eight times in the last three years (2012-2014) as compared to the prior three year period (2009-2011).

71.     On information and belief, and unbeknownst to Nucap at the time, this unprecedented and substantial increase in Bosch's access to the Nucap Engineering Database

coincided with Bosch's downloading and copying of Nucap's Drawings onto Bosch templates for the purpose of distributing the Nucap Drawings to low-cost manufacturers. Bosch assigned the drawings Bosch part numbers, and labeled at least certain of these drawings on the Bosch templates with Bosch's own copyright notice.

72.     On information and belief, and without Nucap's express or implied consent, Bosch disclosed the Nucap Drawings to low-cost manufacturers, notwithstanding that Bosch knew at the time of such disclosure that it had a duty to maintain the secrecy of the Nucap Drawings.

73.     On information and belief, engineers or other employees of Bosch provided the Nucap Drawings to low-cost manufacturers in furtherance of Bosch's plan to source Nucap-designed backing plates, shims, and other brake components from those other parties. Bosch also changed certain specifications for the materials to be used in manufacturing the Nucap Designs without Nucap's knowledge or authorization.

74.     Those involved in accessing, copying, reproducing, and creating derivative works of the Nucap Drawings include at least the Director of Product Development of the Bosch Braking Systems Unit, and employees and engineers at Robert Bosch, Bosch Brake Components, and Bosch's China-based facility. On information and belief, this conduct occurred at least at Bosch's Illinois headquarters, other Bosch locations in the United States, and at Bosch China. On information and belief, engineers and employees at Bosch were involved in the unauthorized use and distribution of Nucap Drawings within Bosch and to third parties in the United States, China, and elsewhere. On information and belief, Bosch's unauthorized use and distribution included unauthorized sending and receiving of the Nucap Drawings (reflecting the Nucap

Designs) within the United States, from the United States to outside the United States, and from outside the United States into the United States.

75.     On information and belief, the conduct described herein was directed and coordinated by Robert Bosch and Bosch Brake Component employees based at Bosch's Illinois headquarters.  Robert Bosch at all times material to the events herein had the right and ability to supervise and control the conduct of its wholly-owned direct subsidiary Bosch Brake Components, including the conduct at issue here.  Robert Bosch also has a direct financial interest in those activities.  On information and belief, Bosch at all times material to the events herein also had the right and ability to supervise and control the conduct of Bosch China with respect to the conduct at issue here.  Bosch also has a direct financial interest in those activities.

**F.     Bosch Induces Nucap's Supplier to Breach an Exclusive Agreement and to Divert Proprietary Composite Materials from Nucap to Low-Cost Manufacturers**

76.     Nucap has sourced, and continues to source, the highest quality materials for its brake components.  Many of Nucap's shims, including shims supplied to Bosch, were made from proprietary steel-rubber composites that were specifically co-developed with, and sourced from, Trelleborg Rubore.

77.     Nucap had a valid and enforceable exclusive agreement with Trelleborg Rubore for the supply of the Rubore Shim Composites for use in vehicle brake components in North America.  Pursuant to that agreement, Trelleborg Rubore was not to supply the Rubore Shim Composites co-developed with Nucap to any other entity for use in vehicle brake components in North America.  Nucap and Trelleborg Rubore have acted and transacted millions of dollars of business under this agreement for years.

78.     Bosch was aware of Nucap's exclusive agreement with Trelleborg Rubore for the supply of Rubore Shim Composite.  Bosch nevertheless, after copying Nucap's Drawings,

deliberately, intentionally, and unjustifiably demanded that Trelleborg Rubore breach its exclusive agreement with Nucap, and demanded that Trelleborg Rubore divert the supply of substantial quantities of Rubore Shim Composites to Bosch's own specified suppliers. Bosch, on information and belief, had already qualified these suppliers to manufacture shims based on Nucap's Drawings.

79.     As part of Bosch's plan, the Vice President of Robert Bosch LLC and President of Bosch Brake Components personally visited Trelleborg Rubore's facilities in Northville, Michigan, and also communicated by email and/or telephone with executives at Trelleborg Rubore. Bosch demanded that Trelleborg Rubore enter into a direct contractual relationship with Bosch, and supply Rubore Shim Composites directly to Bosch's own specified suppliers. On information and belief, Bosch directly and or indirectly threatened to take away other significant business from Trelleborg Rubore affiliates, including significant business in wholly unrelated areas, if Bosch's demands for the Rubore Shim Composites were not promptly met.

80.     Faced with these threats, and as a direct and proximate result of Bosch's wrongful actions, Trelleborg Rubore breached its exclusive agreement with Nucap and has begun to supply Rubore Shim Composites directly to Bosch's other suppliers.

**G.      Bosch Reduces Nucap's Supply of Brake Components and Causes the Business Relationship Termination**

81.     In the third quarter of 2014, Bosch suddenly demanded that Nucap provide Bosch with more than twice the quantities Bosch had required in the preceding calendar quarters. This included in many cases an inexplicable substantial increase in the number of shims used in vehicle models that typically have a very low demand. Without prior communication, Bosch made this highly unusual demand despite full knowledge that Nucap was in the midst of consolidating its shim operations to its Toronto, Canada facility. Attempting to support Bosch,

Nucap significantly increased its workforce and worked around the clock to try to comply with Bosch's unreasonable demands. Nevertheless, Bosch threatened Nucap with service level fines due to alleged late deliveries. Bosch further threatened Nucap with desourcing components.

82.     By copying the Nucap Drawings to create its own library, diverting Rubore Shim Composites to Bosch's other suppliers, and building up an inventory of millions of Nucap shims, Bosch had positioned itself to desource Nucap. Bosch, in fact, advised Nucap that it intended to vastly reduce the quantities of brake components acquired from Nucap in the future.

83.     Nucap informed Bosch of the devastating impact this would have on Nucap's business and requested that Bosch bring its account current before the parties discussed the drastic changes that Bosch was proposing. Nucap terminated access of authorized Bosch employees to the Nucap Engineering Database. The relationship terminated and Bosch stated that it was using other suppliers to supply brake components. On information and belief, it would not be possible for other suppliers to get up to speed so quickly to supply Bosch for the thousands of components required to service the aftermarket brake industry. The only way that these suppliers could do so was by wrongfully using the Nucap Drawings.

84.     On termination of the relationship, Nucap promptly sought Bosch's assurance that Bosch had not misused or disclosed, and would not misuse or disclose, Nucap's trade secret, confidential and proprietary information, including the Nucap Drawings (and Nucap Designs reflected therein). Bosch claimed in response that it was not aware of any written agreement to maintain the confidentiality of Nucap's information, that it had not and would not provide Nucap's trade secret and confidential information to any third party, and that Bosch has honored its obligations pertaining to the documents and information provided by Nucap. As described above, Bosch's representations were untrue.

85.     Nucap has been forced to commence this action and assert the claims herein in order to protect its significant investment, to stop Bosch and others from wrongfully continuing to profit from the wrongful use of Nucap's intellectual property, and to try to stem the substantial damage that Bosch's actions have inflicted, and are continuing to inflict, upon Nucap.

## COUNT I
## TRADE SECRET MISAPPROPRIATION

86.     Nucap hereby restates and realleges the allegations set forth in Paragraphs 1 through 85 above and incorporates them by reference.

87.     The Nucap Drawings (and Nucap Designs reflected therein), including the confidential specifications and tolerances, are extremely valuable and represent millions of dollars of investment and years of engineering work.  The Nucap Drawings provide Nucap with an important competitive edge over its competitors, and derive significant economic value from being confidential and proprietary and not being generally known.  As described above, the Nucap Drawings could not be acquired or duplicated by others even with access to the same factory-installed brake assemblies reverse engineered by Nucap, or to Nucap's own backing plates, shims, and other brake components.

88.     As described in more detail above, the Nucap Drawings are not generally known outside of Nucap, and are known to Nucap employees only on a "need to know" basis.  Nucap has taken extensive and affirmative steps to maintain the secrecy of the Nucap Drawings including, but not limited to, requiring all of its employees to execute Non-Disclosure Agreements, restricting access to hard copy and electronic copies of the Nucap Drawings within the company, and strictly limiting access to only specific Bosch employees under assurances of confidentiality.

25

89.     Bosch is improperly using and disclosing Nucap's trade secret information without Nucap's consent, including by, on information and belief, providing the Nucap Drawings (reflecting the Nucap Designs) and other Nucap confidential information to third parties who are, or are intending to, improperly use the Nucap Drawings to manufacture brake components.

90.     Bosch knew or had reason to know that the Nucap Drawings (and Nucap Designs reflected therein), constituted Nucap's trade secret information, and that Bosch had a duty to maintain the secrecy of that information, but chose instead to deliberately misappropriate the information and use it to Bosch's own advantage.  Bosch was provided access to the Nucap Drawings through its relationship with Nucap on the understanding that the information would be maintained by Bosch in confidence.  Bosch represented to Nucap that it would maintain the confidential and proprietary markings on Nucap's drawings and would treat the information accordingly.  Bosch was also aware of the measures that Nucap took to protect the security and confidentiality of the Nucap Engineering Database and the Nucap Drawings, and agreed that only a limited number of Bosch employees would have access to the Nucap Engineering Database and Nucap Drawings.

91.     As a direct and proximate result of Bosch's misappropriation of trade secrets, Nucap has suffered, and will continue to suffer, monetary loss to its business, reputation, and goodwill.  Nucap is entitled to recover from Bosch, in amounts to be determined at trial, the damages it has sustained and will sustain, and any gains, profits and advantages obtained by Bosch as a result of Bosch's acts of misappropriation, including but not limited to money received by Bosch from the sale of vehicle parts manufactured based upon Nucap's trade secret information.

92.    Nucap is further entitled to an injunction restraining Bosch from engaging in any further misappropriation or any further distribution or use of the misappropriated Nucap Drawings (and Nucap Designs reflected therein), including at least the impounding and destruction of any misappropriated trade secrets or components made using the misappropriated trade secrets, and an injunction against the import, sale, and distribution of components made using the misappropriated trade secrets.  Unless Bosch is enjoined and prohibited from further misappropriation, Bosch will continue to intentionally use and disclose Nucap's trade secrets and to profit from the sale of components made using the misappropriated trade secrets.

93.    Bosch's misappropriation of trade secrets was deliberate, willful, and malicious. Bosch gained access to the trade secret information by virtue of its long-standing relationship with Nucap, and by misrepresenting its intended use of that information.  As a result, Nucap is entitled to treble damages and to recover its attorneys' fees from Bosch pursuant at least to 765 ILCS 1065/4-5.

## COUNT II
## COPYRIGHT INFRINGEMENT

94.    Nucap hereby restates and realleges the allegations set forth in Paragraphs 1 through 85 above and incorporates them by reference.

95.    The Nucap Canada Drawings are original material and constitute copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 et seq.  Nucap Industries is not required to file a copyright registration for the Nucap Canada Drawings prior to filing suit because they are not "United States Works" within the meaning of  17 U.S.C. § 411.

96.    Without consent, authorization, approval, or license, Bosch knowingly, willfully, and unlawfully copied, adapted, and distributed Nucap Industries' copyrighted Nucap Canada

Drawings, portions thereof, or derivative works and continues to do so. Bosch is infringing

Nucap Industries' copyrights in the Nucap Canada Drawings.

97.     On information and belief, Bosch has made and supplied copies of Nucap

Industries' copyrighted works, and derivative works, to unauthorized Bosch employees and

engineers, and to low-cost manufacturers to manufacture parts for Bosch. On information and

belief, those low-cost manufacturers are using, or intend to use, Nucap Industries' copyrighted

works of manufacture brake components according to Nucap's designs, at least some of which

are being purchased by Bosch. Such use is not licensed. Accordingly, Bosch has directly,

contributorily, and vicariously infringed Nucap Industries' copyrighted works by, with

knowledge of the infringing activity, encouraging, inducing, allowing, materially contributing,

causing and assisting others to copy, adapt, use, and distribute Nucap Industries' copyrighted

works and works derived therefrom.

98.     On information and belief, Bosch's direct, contributory, and vicarious

infringements are and have been knowing and willful.

99.      By this unlawful copying, use and distribution, Bosch has violated Nucap

Industries' exclusive rights under 17 U.S.C. § 106(1), (2), and (3).

100.    Bosch has realized unjust profits, gains, and advantages as a proximate result of

its infringement, and will continue to do so as long as such infringement is permitted to continue.

101.    As a direct and proximate result of Bosch's direct and willful copyright

infringement, and contributory and vicarious infringement, Nucap Industries has suffered, and

will continue to suffer, monetary loss to its business, reputation and goodwill. Nucap Industries

is entitled to recover from Bosch, in amounts to be determined at trial, the damages it has

sustained and will sustain, and any gains, profits and advantages obtained by Bosch as a result of

Bosch's acts of infringement and Bosch's use and publication of the copyrighted materials.

102.     Nucap Industries is further entitled to an injunction restraining Bosch from

engaging in any further such acts in violation of the United States copyright laws.  Nucap has

suffered an irreparable injury, the remedies available at law are inadequate to compensate for

that injury, the balance of interests strongly favors an injunction, and the public interest would

not be disserved by an injunction.  Unless Bosch is enjoined and prohibited from infringing

Nucap Industries' copyrights and contributorily infringing Nucap Industries' copyrights by

knowingly and materially causing, assisting and encouraging others to infringe those copyrights,

and unless all infringing products and advertising materials are seized, Bosch will continue to

intentionally directly and indirectly infringe of Nucap Industries' copyrights.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACT

103.     Nucap hereby restates and realleges the allegations set forth in Paragraphs 1

through 85 above and incorporates them by reference.

104.     As described above, there was a valid and enforceable contract between Nucap

and Trelleborg Rubore for the exclusive supply of Rubore Shim Composites to Nucap for use in

brake components within North America.

105.     Bosch was aware of this contractual relationship, and had been purchasing parts

from Nucap manufactured using Rubore Shim Composites through this contractual relationship

for years.  Further, Trelleborg Rubore expressly told Bosch that it did not believe that Bosch

could deal directly with Trelleborg Rubore without including Nucap.

106.     Bosch intentionally and without justification induced Trelleborg Rubore to breach

its exclusive agreement with Nucap, threatening Trelleborg Rubore and Trelleborg Rubore's

parent and/or affiliate companies that a refusal to sell Rubore Shim Composites to Bosch would lead to Bosch ceasing to do other business with Trelleborg Rubore's affiliates, including wholly unrelated lines of business.

107.    As a direct and proximate cause of Bosch's conduct, Trelleborg Rubore breached its contract with Nucap and began supplying Rubore Shim Composites to Bosch's third-party suppliers.

108.    As a direct and proximate cause of Bosch's conduct, Nucap has lost its exclusive relationship with Trelleborg Rubore and the profits it was deriving from that relationship, and has suffered monetary loss to its business, reputation, and goodwill.  Nucap is entitled to recover damages to fully compensate it for those losses.  In addition, Nucap is entitled to recover punitive damages based on Bosch's deliberate, willful, and malicious conduct.

109.    Nucap is further entitled to an injunction restraining Bosch from engaging in any further such acts interfering with its contractual relationship with Trelleborg Rubore.  Unless Bosch is enjoined and prohibited from engaging in such acts, Bosch will continue to intentionally interfere with Nucap's exclusive contractual relationship with Trelleborg Rubore.

**COUNT IV**
**UNFAIR COMPETITION**

110.    Nucap hereby restates and realleges the allegations set forth in Paragraphs 1 through 85 above and incorporates them by reference.

111.    Nucap worked in good faith with Bosch to help Bosch penetrate and grow its business in the aftermarket brake industry.  As described above, Nucap for years supported Bosch by providing knowledge, expertise, and engineering assistance.

112.    Nucap provided Bosch with access to new and proprietary brake component technologies, including Nucap's NRS technology, Step Chamfer Technology, and Nu-Lock Independent Floating Shim Technology.

113.    Nucap further provided Bosch with access to the most advanced brake component materials in the world through, for example, Nucap's exclusive agreement with Trelleborg Rubore for the supply of the proprietary Rubore Shim Composites.

114.    Nucap further provided Bosch with access to confidential information relating to the design and manufacture of brake components, including, without limitation, access to the Nucap Drawings.  Even apart from the confidential information contained in the Nucap Drawings, the compilation of Drawings contained in the Engineering Database represents years of effort of gathering all of the factory-installed brake assemblies from the more than 1,500 different makes and models of vehicles, which Nucap has completed at great expense, gives Nucap a significant advantage over its competitors and would be enormously expensive and time-consuming to replicate.  Bosch gained the breadth and amount of access that it did to the Nucap Engineering Database (including the Nucap Drawings) by representing that it required the information for its own internal purposes and would maintain the information in confidence.

115.    In fact, on information and belief, Bosch was engaged in a plan to misappropriate the labors and expenditures of Nucap.  Bosch, on information and belief, was engaged in a plan to benefit from Nucap's significant investment of time and money and years of experience to grow its aftermarket business and to then replace Nucap with other manufacturers who would improperly use the Nucap Drawings, and to divert the proprietary Rubore Shim Composites to Bosch's own suppliers' production facilities.

116.    As a direct and proximate cause of Bosch's misconduct, Nucap has been deprived

of the value of its substantial investment in its core corporate assets, and deprived of the full

profits that would have been earned on its investments and from its exclusive contractual

relationship with Trelleborg Rubore.  Bosch, by the actions described herein, has

misappropriated the labors and expenditures of Nucap and its conduct violates the standards of

commercial morality.

117.    The aforementioned conduct constitutes unfair competition, has caused and

continues to cause irreparable injury to Nucap, for which Nucap has no adequate remedy at law.

118.    Nucap is entitled to an injunction restraining Bosch from further unfair

competition, including the continued and further use of the Nucap Drawings, and the continued

and further interference with Nucap's business relationships.  Nucap further is entitled to

compensatory damages resulting from Bosch's misconduct and for punitive damages based on

Bosch's deliberate, willful, and malicious conduct.

## COUNT V – UNJUST ENRICHMENT

119.    Nucap hereby restates and realleges the allegations set forth in Paragraphs 1

through 85 above and incorporates them by reference.

120.    Nucap, as described above, worked in good faith with Bosch to help Bosch

penetrate and grow its business in the aftermarket brake industry.  Nucap provided Bosch with

access to new and proprietary brake component technologies and access to the most advanced

brake component materials in the world.  Nucap further provided Bosch with access to

confidential information relating to the design and manufacture of brake components, including,

without limitation, access to the Nucap Drawings (and Nucap Designs reflected therein).  Even

apart from the confidential information contained in the Nucap Drawings (and Nucap Designs

reflected therein), the compilation of Drawings contained in the Nucap Engineering Database

represents years of effort of gathering all of the factory-installed brake systems from the more than 1,500 different makes and models of vehicles, which Nucap has completed at great expense, gives Nucap a significant advantage over its competitors, and which would be enormously time consuming and expensive to replicate.

121.    On information and belief, Bosch was engaged in a scheme to misappropriate the labors and expenditures of Nucap.  Bosch, on information and belief, executed on that plan by copying and distributing the Nucap Drawings (and Nucap Designs reflected therein) to other manufacturers and by diverting Nucap's exclusive supply of Rubore Shim Composites.

122.     Bosch has unjustly retained the benefit of access to the Nucap Drawings (and Nucap Designs reflected therein), access to the Rubore Shim Composites, and access to other confidential information provided to Bosch to the direct detriment of Nucap.  Bosch's retention of that benefit violates the fundamental principles of justice, equity, and good conscience.

123.    Nucap is entitled to recover for the unjust enrichment resulting from Bosch's misconduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Nucap respectfully prays that judgment be entered for Nucap Industries and Nucap U.S. and against Robert Bosch and Bosch Brake Components, as follows:

a.    Entry of judgment holding Bosch liable for directly, contributorily, and vicariously infringing the copyrights at issue in this litigation;

b.    Entry of judgment holding Bosch liable for trade secret misappropriation, tortious interference with Nucap's agreement with Trelleborg Rubore, unfair competition, and unjust enrichment;

c.     An order preliminarily and permanently enjoining Bosch, its officers, agents, servants, employees, its affiliated companies, its assigns and successors in interest, and those persons acting in concert or participating with them, from continued acts of infringement of the copyrights at issue in this litigation;

d.     An order preliminarily and permanently enjoining Bosch, its officers, agents, servants, employees, its affiliated companies, its assigns and successors in interest, and those persons acting in concert or participating with them, from continued acts of misappropriation of Nucap's trade secrets;

e.     An order preliminarily and permanently enjoining Bosch, its officers, agents, servants, employees, its affiliated companies, its assigns and successors in interest, and those persons acting in concert or participating with them, from continued tortious interference and unfair competition;

f.     An order preliminarily and permanently enjoining Bosch, its officers, agents, servants, employees, its affiliated companies, its assigns and successors in interest, and those persons acting in concert or participating with them, from continued reproduction and distribution of the Nucap Drawings and Nucap Designs, continued use of the Nucap Drawings and Designs to make or have made components, and continued purchase, import, distribution, offer for sale, and sale of components manufactured using the Nucap Drawings and Nucap Designs;

g.     An order that all copies of the Nucap Drawings made, used, or distributed by Bosch, and all components manufactured based on the Nucap Drawings and Nucap Designs, be impounded and destroyed or otherwise reasonably disposed of;

h.      An order preliminarily and permanently enjoining Bosch, its officers, agents, servants, employees, its affiliated companies, its assigns and successors in interest, and those persons acting in concert or participating with them, from further interference with Nucap's contractual relationship with Trelleborg Rubore and from purchasing any further materials subject to Nucap's exclusive agreement with Trelleborg Rubore;

i.      An order preliminarily and permanently enjoining Bosch, its officers, agents, servants, employees, its affiliated companies, its assigns and successors in interest, and those persons acting in concert or participating with them from further unfair competition, including the continued and further use of the Nucap Drawings (and Nucap Designs reflected therein) and other Nucap information and the continued and further interference with Nucap's business relationships;

j.      Monetary damages resulting from Bosch's wrongful acts, including pre-judgment and post-judgment interest;

k.      An award of all of the gains, profits and advantages received by Bosch as a result of its wrongful conduct;

l.      Enhancement of damages arising from Bosch's willful and malicious misappropriation of trade secrets, pursuant to 765 ILCS 1065/4;

m.      Exemplary damages;

n.      An award of attorneys' fees pursuant to at least 765 ILCS 1065/5;

o.      Nucap's costs incurred in this action; and

p.      Such other and further legal and equitable relief as may be available under law and which the Court may deem proper.

## <u>JURY TRIAL DEMAND</u>

Pursuant to Federal Rule of Civil procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.


Dated: March 12, 2015     Respectfully submitted,

            KRAUSFLAMING LLC

            By: <u>/s/ Todd H. Flaming</u>
              Todd Flaming, Esq.

              KrausFlaming LLC
              20 South Clark Street
              Suite 2620
              Chicago, Illinois  60603
              Phone: (312) 447-7217
              Fax: (312) 236-9201
              Email:  Todd@KrausFlaming.com

              *Attorneys for Plaintiff Nucap*
              *Industries Inc. and Nucap U.S. Inc.*

OF COUNSEL:

Michael A. Jacobs, Esq.
(moving for pro hac vice admission)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Phone: (415) 268-7455
Fax: (415) 268-7522
Email: mjacobs@mofo.com

Kenneth Kuwayti, Esq.
(moving for pro hac vice admission)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
Phone: (650) 813-5688
Fax: (650) 494-0792
Email: kkuwayti@mofo.com

Kyle W. K. Mooney, Esq.
(moving for pro hac vice admission)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Phone: (212) 336-4092
Fax: (212) 468-7900
Email: kmooney@mofo.com

*Attorneys for Plaintiffs Nucap
Industries Inc. and Nucap U.S. Inc.*