**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NUCAP INDUSTRIES INC. and | ) | |
| NUCAP US INC., | ) | No. 15-cv-02207 |
| | ) | |
| Plaintiffs, | ) | Honorable Joan B. Gottschall |
| | ) | |
| v. | ) | Magistrate Young B. Kim |
| | ) | |
| ROBERT BOSCH LLC and BOSCH BRAKE | ) | |
| COMPONENTS LLC, | ) | |
| | ) | Jury Trial Demanded |
| Defendants. | ) | |

**PLAINTIFFS AND COUNTERCLAIM DEFENDANTS NUCAP INDUSTRIES INC. AND
NUCAP US INC.'S ANSWER TO COUNTS III – VII OF BOSCH'S COUNTERCLAIMS**

Plaintiffs Nucap Industries Inc. and Nucap US Inc. (collectively "Nucap") respectfully

submit this answer and affirmative defenses to Counts III through VII of Defendants Robert

Bosch LLC and Bosch Brake Components LLC (collectively "Bosch")'s counterclaims

("Counterclaims").[1]

## PRELIMINARY STATEMENT

Bosch's counterclaims are an attempt to retaliate against Nucap for refusing to collude

with Bosch to provide automotive consumers with unsafe brake components.

Nucap, a technology company founded in 1994, has invested millions of dollars and

countless R&D and engineering hours to develop thousands of aftermarket brake component

drawings and uses these drawings to build brake component tooling and brake components with

a view to being able to produce brake components for most vehicle types in the aftermarket

---

[1] Nucap has moved to dismiss Counts I and II of Bosch's Counterclaims and does not, therefore, respond to those counts in this Answer to Counts III – VII of Bosch's Counterclaims. Nucap files and serves this Answer without prejudice to its motion to dismiss Counts I and II of Bosch's Counterclaims. Should Nucap's motion to dismiss be denied, Nucap will respond to Counts I and II of Bosch's Counterclaims, and assert any affirmative defenses thereto, consistent with Nucap's obligations under the Federal Rules of Civil Procedure.

brake industry. Nucap has an uncompromising dedication to the supply of high quality, high performance, reliable, and safe aftermarket brake components.

Nucap is recognized as a pioneer and leader in the industry. Nucap holds more than 80 patents worldwide concerning brake components and related technologies. Nucap's engineering team has a total of more than 300 years of experience designing brake components, and Nucap has invested millions in R&D and testing to design high quality, reliable, and safe brake components. Nucap performs this R&D and testing at its own state of the art facilities in Toronto, Ontario, Canada, and Wolcott, Connecticut. Nucap has created one of the most comprehensive libraries of drawings for aftermarket brake components in the world. Nucap currently maintains more than 12,000 drawings that reflect its investment in R&D. Nucap's backing plate drawings, for example, reflect crucial fit and function characteristics including the specific profile and tolerances.

Nucap also has significant experience in manufacturing brake components, a reputation for being a reliable and innovative manufacturer, and continuously invests time and capital to maintain its status as the best aftermarket brake component manufacturer in the industry. Nucap manufactures brake components all over the world including in Toronto, Wolcott, and also in China where Nucap opened a facility to support Bosch.

When Nucap was formed, 20 years ago, the automotive brake pad industry was in the process of moving from riveted (mechanically attached) brake pads to IM (molded and glued) brake pads. Although the IM process removed the use of rivets from the brake pad assembly process (attaching the friction material onto the steel backing plate), the IM process introduced a new set of problems. Since the IM process heavily relied on a glue bond between the friction material and the steel backing plate, the need for beginning the entire assembly process with a

2

clean, rust free, contaminant free steel backing plate was a must in order to achieve a proper bond. Adhesives also broke down in high heat and other environmental conditions that are normally experienced by brake pads when on a vehicle, also compromising the bond, which can result in unsafe braking.

Nucap, since its inception, has dedicated itself to continually improving bonds between the friction material and the steel backing plate. Nucap is recognized as an expert and a leader in the field of mechanical attachment of friction material and other brake components, such as shims, onto the steel backing plate. Nucap was awarded the PACE 2001 Award for Innovation in Manufacturing Process, for its NRS technology — the premiere mechanical attachment technology that allows for a safe and secure mechanical bond between the backing plate and the "friction material." An expert panel of judges stated "The NUCAP Retention System (NRS) is a compelling example of an innovative solution to an unsatisfactory but accepted process in the automotive industry."

In 2004, Nucap decided to enter the shim market with its revolutionary Nulok shim technology which provided the most secure bond to the steel backing plate. Nulok shims are easy to install correctly, and help dampen noise at all aftermarket levels. The Nulok shim by Nucap was another attachment breakthrough that solved the many problems with existing shims, including shim delamination and shim migration (which was a major safety issue as migrated shims could act as cutting tools and cut off brake rotors). Nucap released engineering bulletins to the aftermarket brake industry to help raise awareness of migrating shims and to show how Nulok shims could solve this major safety issue. Nucap has singlehandedly changed the brake pad aftermarket for the better with the Nucap specific designed Nulok shims, as they dampen

3

noise, are easy to install and most importantly, do not migrate and eliminate that major safety concern.

Bosch was a relative latecomer to the aftermarket brake component industry, and entered the industry through its acquisition of Morse Automotive's brake pad business in late 2008. Bosch relied heavily on Nucap, and Nucap's supply of quality and safe brake components, to build its brake pad business over the years. Nucap offered all of the safety technologies, including NRS and Nulok, to Bosch in order to battle the cost pressures and lack of standards for aftermarket brake pads in North America. Nucap suggested that Bosch join Nucap in its movement against sub-standard products that compromise public safety, but instead Bosch chose to go a complete 180 degrees and demanded that Nucap supply Bosch with brake pads manufactured using lower cost and inferior "black steel." Bosch clearly stated to Nucap that since there are no standards in North America for aftermarket brake pads, Bosch will do whatever it takes to compete, including using "black steel" to produce brake pads.

In late 2013, for example, Lutz Marschall, Vice-President of the Braking Division for Robert Bosch LLC, met with Nucap and demanded that Nucap supply allegedly lower-cost black steel" backing plates. Nucap's initial reaction at the meeting was that Mr. Marschall had to be joking. But it soon became clear that he was deadly serious, as he attempted at the meeting to pressure Nucap to provide the "black steel" backing plates. Nucap refused to do so because, as Nucap expressed to Mr. Marschall, "black steel" (steel that has not been "pickled and oiled") is essentially rusted steel and separates from the friction material, compromising brake pad integrity and posing serious safety concerns.

In early 2014, Mr. Marschall again visited Nucap and this time threatened to take away business from Nucap unless Nucap supplied Bosch with the lower-cost "black steel" backing

plates Bosch desired.  Mr. Marschall suggested that the aftermarket brake component industry did not have government-imposed safety standards and that Bosch could not afford to use the "pickled and oiled" steel because Bosch needed to compete with low-cost competitors.  When Nucap refused to participate in Bosch's scheme, Bosch drastically slashed its projected orders of backing plates from Nucap, and pushed Nucap to supply shims that Bosch could combine with backing plates obtained from other manufacturers.  Nucap again expressed serious concerns regarding the safety of "black steel" backing plates, and also expressed serious concerns about Nucap's shims being combined with backing plates supplied by third party manufacturers that may be using "black steel" — particularly since Nucap's Nulok shims are specifically designed to fit Nucap steel backing plates.  Nucap could not guarantee that Nucap's Nulok shims could perfectly fit an unknown steel backing plate supplied by other manufacturers.

The parties' business relationship ultimately came to an end over these safety issues. Nucap came to learn that Bosch had misappropriated and misused Nucap's drawings to qualify and approve other brake component manufacturers, including, on information and belief, low-cost manufacturers willing to supply Bosch with "black steel" backing plates.  In short, Nucap made a conscious and deliberate decision to place customer safety ahead of profit, was forced to file suit against Bosch over its theft of Nucap's trade secret and copyrighted brake component drawings, and Bosch has now asserted several meritless retaliatory counterclaims that merely put a spotlight on its own attempt to pressure Nucap into compromising customer safety.  Nucap has separately moved to dismiss Bosch's meritless antitrust counterclaims (Counts I, II), and herein responds to Bosch's remaining counterclaims (Counts III-VII).

## RESPONSE TO BOSCH'S SPECIFIC ALLEGATIONS AND CLAIMS

Nucap further responds to Counts III through VII of Bosch's Counterclaims as follows:

### PARTIES

1.     Counter-plaintiff Bosch Brake Components is a limited liability company organized under the laws State of Delaware, with its principal place of business at 2800 South 25th Avenue, Broadview, Illinois.

**ANSWER:**     On information and belief, Nucap admits the allegations in Paragraph 1.

2.     Counter-plaintiff Robert Bosch is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 2800 South 25th Avenue, Broadview, Illinois.

**ANSWER:**     On information and belief, Nucap admits the allegations in Paragraph 2.

3.     Upon information and belief by way of its Complaint, Counter-defendant Nucap Industries is a corporation organized and existing under the laws of Ontario, Canada, with its principal place of business at 3370 Pharmacy Avenue, Toronto, Ontario, Canada.

**ANSWER:**     Nucap admits the allegations in Paragraph 3.

4.     Upon information and belief by way of its Complaint, Counter-defendant Nucap US is a corporation organized and existing under the laws of Connecticut, with its principal place of business in Wolcott, Connecticut.

**ANSWER:**     Nucap admits the allegations in Paragraph 4.

### JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the antitrust claim in this case pursuant to 15 U.S.C. § 2.  This Court has jurisdiction over the remaining counterclaims in this case pursuant to 28 U.S.C. §§ 1332(a), 1338(b), and 1367.  These counterclaims arise out of the same nucleus of transactions, occurrences and events as the Complaint.

**ANSWER:**     Nucap states that Bosch has failed adequately to plead Counts I and II of

Bosch's Counterclaims (collectively, the "Antitrust Counterclaims"), that Nucap has moved to

dismiss the Antitrust Counterclaims, and that, accordingly, no response is required at this time as

to the allegations in the first sentence of Paragraph 5 or other allegations relating solely to the

Antitrust Counterclaims; Nucap admits that this Court has jurisdiction over Counts III – VII of

6

Bosch's Counterclaims pursuant to 28 U.S.C. §§ 1332(a) and 1367; Nucap denies that this Court

has jurisdiction over Counts III – VII of Bosch's Counterclaims pursuant to 28 U.S.C.

§ 1338(b).

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**ANSWER:**     Nucap denies the allegations in Paragraph 6 insofar as it suggests that

Bosch has properly pleaded its Antitrust Counterclaims against Nucap and that those claims

should proceed in this Court, and Nucap otherwise admits the allegations in Paragraph 6.

FACTUAL BACKGROUND

7.      In 2008, Bosch's Automotive Aftermarket division purchased certain assets of the
Morse Automotive Corporation related to its friction business in the United States and as Bosch
Braking Components LLC entered the aftermarket brake pad system business.

**ANSWER:**     Nucap lacks knowledge or information sufficient to form a belief as to the

truth of the allegation that "[i]n 2008, Bosch's Automotive Aftermarket division purchased

certain assets of the Morse Automotive Corporation related to its friction business in the United

States[,]" and denies the remainder of the allegations in Paragraph 7 on the ground that they are

incomprehensible.  Nucap, on information and belief, admits that Bosch's first foray into the

aftermarket brake industry was its acquisition of Morse Automotive Corporation's brake pad

business in late 2008; that Bosch through that acquisition acquired operations in the U.S., China,

and Mexico; that Bosch subsequently formed a new brake systems business unit and formed

Bosch Brake Components LLC, a subsidiary responsible for Bosch's brake systems business.

8.      The relevant components of a typical brake pad system are friction material, a
backing plate, shims, and hardware.

**ANSWER:**     Nucap denies the allegations in Paragraph 8, except Nucap admits that

disc braking systems generally include brake pads comprising metal backing plates (with

attached "friction material"), shims made of dampening material attached on the side of the

7

backing plate opposite the friction material that minimize noise, vibration, and harshness, and

brake hardware such as wear sensors, piston clips, and anti-rattle clips (collectively, "Brake

Components").

9.     Each unique backing plate is identified by a universally recognized "D" part
number which is assigned by the Friction Material Standards Institute®.  The part number is
used as the standard and as a common language – the FMSI number.  (See
http://www.fmsi.org/historyAndMission/).

**ANSWER:**     Nucap denies the allegations in Paragraph 9, except Nucap admits that the

backing plates for a particular wheel and make and model of car are assigned a unique "D" part

number by the Friction Material Standards Institute® ("FMSI") and that those "D" numbers may

be referred to as "FMSI numbers."

10.     Since 1948, FMSI "has performed a very valuable service to the automotive
aftermarket -- the creation of a standardized part numbering system for brakes and clutch
facings." (See http://www.fmsi.org/historyAndMission/).

**ANSWER:**     Nucap admits, on information and belief, that FMIS has since 1948

created and circulated a standardized part numbering system for backing plates; Nucap denies

that the referenced website includes the quoted language, but Nucap admits that the referenced

website indicates that FMSI was founded in 1948, and refers to the referenced website for its

contents.

11.     FMSI's mission is to "[c]ollect, characterize, and communicate to FMSI's
members the Vehicle Manufacturer's OE service product and include this product in FMSI's
standardized part numbering system." (See http://www.fmsi.org/historyAndMission/).

**ANSWER:**     Nucap admits, on information and belief, that FMSI's mission is as stated

in Paragraph 11, admits that the referenced website includes the quoted language, admits that the

referenced website purports to describe FMSI's mission, and refers to the referenced website for

its contents.

12.     Bill Murray, Vice President of Global Sales for Nucap, is a Director of FMSI.

**ANSWER:**    Nucap admits the allegations in Paragraph 12.

13.    New vehicles sold by a manufacturer will contain four sets (one for each wheel) of components consisting of a backing plate, shims, friction material, and related hardware. The FMSI "D" plate number is the universal identifier for the backing plate.

**ANSWER:**    Nucap denies the allegations in Paragraph 13, except Nucap admits that new vehicles with disc braking systems will include a braking assembly on each wheel, that those braking assemblies typically include a backing plate, friction material, shim, and related hardware; and Nucap further admits that backing plates for a particular wheel and make and model of car are assigned a unique "D" part number by FMSI.

14.    In 2008, Bosch purchased backing plates from various suppliers, *i.e.*, Gunn Metal, Capital Tool & Die and Nucap.

**ANSWER:**    Nucap lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, except Nucap admits that Bosch purchased backing plates from Nucap through Morse Automotive following its acquisition of Morse Automotive's brake pad business in 2008, and that Bosch later bought Brake Components from Nucap through Bosch Brake Components LLC.

15.    From 2008 to 2014 (when Nucap stopped shipping), Bosch purchased shims from Nucap (previously Anstro) - the only full catalog shim supplier in the United States.

**ANSWER:**    Nucap admits that Bosch purchased shims from Nucap (previously Anstro) from 2008 through 2014, states that Bosch's allegation that Nucap is "the only full catalogue shim supplier in the United States" is unclear and on that basis denied, but admits that Nucap believes that it has the most comprehensive library of drawings for aftermarket shims, and that Nucap designs, develops, manufactures, and sells the best quality, best performing, and safest shims.

16.    Beginning in 2008, Bosch researched and developed its own unique proprietary friction material.

9

**ANSWER:**      Nucap lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 16.

17.      From 2009-2011, as Bosch began to understand the landscape of the automotive aftermarket brake pad industry, it began introducing parts slowly (roughly one to two new assemblies identified by "D" number per month), focusing on quality products and reliable delivery to customers.  As a result of Bosch's dedication to quality, safety, and hard work, Bosch won large contracts which required Bosch to ramp up the availability of more "D" numbered assemblies when released by FMSI.

**ANSWER:**      Nucap lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 17.

18.      During 2012 and 2013, Bosch increased sales of its brake pad assemblies, and increased the release of assemblies to nearly five to six new assemblies per month.

**ANSWER:**      Nucap lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 18.

19.      As part of Bosch's standard operating procedure, "design packets" were created for each braking system assembly which included drawings for all components.  Drawings included pure Bosch drawings and some drawings that contained Bosch information with supplier information inserted in the drawing.  This is custom and practice throughout the automotive industry.

**ANSWER:**      Nucap lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 19, except Nucap states that Bosch wrongfully reproduced

(sometimes changing or removing specifications), misused, and disclosed Nucap's drawings, and

that Bosch's conduct was in violation of Nucap's legal rights, and was not believed to be

"custom and practice throughout the automotive industry."

20.      In order to provide the most economical benefit to consumers, Bosch began looking for additional ways to reduce the prices charged by its suppliers without any effect whatsoever on the safety and quality of its products.

**ANSWER:**      Nucap lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 20, except Nucap states that, beginning by at least 2013,

Bosch repeatedly demanded that Nucap supply Bosch with lower-cost backing plates made out

10

of inferior "black steel" which backing plates Nucap believed, and continues to believe,

compromise quality, performance, and customer safety.

21.     Bosch also investigated and concluded that for aftermarket brake assemblies, conventional stamping of steel backing plates yielded the same (if not superior) benefits than the over-priced fine blank stamping offered by Nucap.

**ANSWER:**     Nucap denies the allegations in Paragraph 21, except Nucap states that it

lacks knowledge or information sufficient to form a belief as to the truth of the allegation that

Bosch investigated certain issues or reached certain conclusions, and further states that Nucap

does not make and never has made any backing plates using fine blank stamping processes.

22.     On information and belief, Nucap sells components to Original Equipment manufacturers, as well as to the automotive aftermarket industry.

**ANSWER:**     Nucap admits the allegations in Paragraph 22.

23.     It is Bosch's policy to be multi-sourced and have more than one supplier for the supply of brake pad assembly components.

**ANSWER:**     Nucap lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 23.

24.     On or around October 2012, Bosch began inquiring into purchasing certain backing plates from Nucap's China plant, where the steel was significantly less expensive. Nucap refused and demanded that Bosch purchase backing plates from Nucap, requiring Bosch to pay more for parts that Bosch could have purchased from alternative suppliers at a lower cost.

**ANSWER:**     Nucap denies the allegations in Paragraph 24, except Nucap admits that in

2012 Nucap had only recently acquired from Nucap's China facility and was in the process of

ensuring that the manufacturing and quality control standards at the China facility satisfied

Nucap's standards; and Nucap further states that it communicated to Bosch that Nucap intended

to supply Bosch with components made at Nucap China once the manufacturing and quality

control was up to Nucap's standards, that Nucap worked hard to  bring the manufacturing and

quality control up to Nucap's standard for the purpose of supply Bosch with components made at

Nucap China, and that Nucap thereafter did in fact supply Bosch with components made at Nucap China.

25.     By late 2013, Bosch was purchasing all of its shims and the majority of its backing plates from Nucap.

**ANSWER:**     Nucap lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, except Nucap states that by late 2013 Bosch was purchasing shims and backing plates from Nucap.

26.     In 2013, Bosch paid a significant premium for Nucap's backing plates ($8-$10 million per year); where equally safe products could have been purchased from other suppliers.

**ANSWER:**     Nucap denies the allegations in Paragraph 26.  Nucap further states that, beginning by at least 2013, Bosch repeatedly demanded that Nucap supply Bosch with lower-cost backing plates made out of inferior "black steel" which backing plates Nucap believed, and continues to believe, compromise quality, performance, and customer safety.

27.     In the first quarter of 2014, Bosch reduced its order of shims from Nucap.

**ANSWER:**     Nucap admits the allegations in Paragraph 27.

28.     In the second quarter of 2014, Bosch was able to increase its orders of shims from Nucap.

**ANSWER:**     Nucap states that it lacks knowledge or information sufficient to form a belief as to whether Bosch "was able to increase its orders of shims from Nucap" in "the second quarter of 2014," but states that Bosch suddenly and without warning more than doubled its shim order from Q2 2014 to Q3 2014 despite full knowledge that Nucap intended to and did in fact consolidate its shim operations from Connecticut to Toronto in mid-2014 which would impose certain temporary restrictions on Nucap's shim manufacturing capacity.

29.     In 2014, Nucap moved its Connecticut manufacturing operations out of the United States.

12

**ANSWER:** Nucap denies the allegations in Paragraph 29, except Nucap admits that, in 2014, Nucap consolidated certain of its shim manufacturing operations based in Connecticut to its Toronto manufacturing facility.

30.     Nucap was unable to meet Bosch's ordered quantities of shims in 2014 through no fault of Bosch.

**ANSWER:** Nucap denies the allegations in Paragraph 2014, and further states that Bosch suddenly and without warning more than doubled its shim order from Q2 2014 to Q3 2014 despite full knowledge that Nucap intended to and did in fact consolidate its shim operations from Connecticut to Toronto in mid-2014 which would impose certain temporary restrictions on Nucap's shim manufacturing capacity.

31.     In mid-2014, Bosch informed Nucap that it was incurring substantial fines from Bosch's customers as a direct result of Nucap's inability to meet Bosch's purchase orders.

**ANSWER:** Nucap denies the allegations in Paragraph 31, except Nucap admits that by September 2014 Bosch had informed Nucap that it was incurring fines based on Nucap's alleged delays in the delivery of certain brake components.

32.     Because Nucap's unjustified increased pricing for backing plates was hurting Bosch's business, Bosch began ordering backing plates from suppliers other than Nucap while continuing to purchase all necessary shims from Nucap.

**ANSWER:** Nucap denies the allegations in Paragraph 32, except Nucap states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning when Bosch began to order backing plates from other suppliers, and whether Bosch was purchasing "all necessary shims" from Nucap.

33.     Nucap then began putting unfair restrictions and demands on Bosch, such as requiring Bosch to pre-pay for all ordered components and refusing to sell Bosch shims unless Bosch increased its orders for over-priced backing plates.

**ANSWER:** Nucap denies the allegations in Paragraph 33. Nucap further states that Bosch threatened to turn elsewhere for backing plates when Nucap refused to make them using

"black steel," that Bosch wanted to use Nucap's shims with "black steel" backing plates that

Bosch acquired elsewhere. Nucap expressed serious concerns about Nucap's products being

combined with backing plates supplied by third party manufacturers as Nucap's Nu-lok shims

are specifically designed to fit Nucap steel backing plates. Nucap could not guarantee that

Nucap's Nulok shims could perfectly fit unknown steel backing plates supplied to Bosch by

other manufacturers.

34.     On November 10, 2014, Nucap unilaterally, without justification and with no
advance warning, stopped shipping components to Bosch -- even for those components for which
Bosch had submitted pre-payment.

**ANSWER:**     Nucap denies the allegations in Paragraph 34.

35.     Prior to Nucap's sudden refusal to fill Bosch's purchase orders, Bosch performed
at an exceptional service level and its reputation for reliable on-time delivery of products to its
retailers was impeccable.

**ANSWER:**     Nucap denies the allegations in Paragraph 35, except Nucap states that it

lacks knowledge or information sufficient to form a belief as to the truth of the allegation that

"Bosch performed at an exceptional service level and its reputation for reliable on-time delivery

of products to its retailers was impeccable."

36.     Nucap's actions and improper conduct has caused Bosch to operate at a far less
service level (just over 50%) to its retail customers and, consequently, damaged Bosch's
outstanding reputation through no fault of Bosch.

**ANSWER:**     Nucap denies the allegations in Paragraph 36.

37.     As a result of Nucap's conduct, Bosch's business relationships with its key retail
customers have also been substantially harmed.

**ANSWER:**     Nucap denies the allegations in Paragraph 37.

38.     Nucap's improper actions has caused Bosch to fall behind in its introduction of
new products because Bosch has had to divert its engineers' time and resources to find
alternative suppliers for the components fully expected to be supplied by Nucap.

**ANSWER:**     Nucap denies the allegations in Paragraph 38.

14

## BOSCH'S USE OF SUPPLIER PROVIDED DOCUMENTS

39.    FMSI publicly releases technical details, tolerances, measurements and schematics for newly introduced "D" numbers for vehicles on a regular basis, roughly 60-80 new numbers a year.

**ANSWER:**    Nucap denies the allegations in Paragraph 39, except Nucap admits that

FMSI creates and makes available basic outlines for backing plates, and that the primary purpose

of the FMSI backing plate drawings is to ensure that backing plates for the different makes and

models of cars are assigned industry-standard part numbers. Nucap specifically denies that these

FMSI drawings provide the same level of detail (including tolerances) as Nucap's drawings or

that the FMSI drawings provide adequate detail to manufacture backing plates.

40.    Suppliers vying for Bosch's business (such as Nucap) send drawings of the newly released FMSI-numbered components they manufactured to Bosch for selection and purchase.

**ANSWER:**     Nucap denies the allegations in Paragraph 40, except Nucap admits that

Nucap made available to certain Bosch employees Nucap drawings for Brake Components that

indicated on their face that they were confidential, proprietary and copyrighted, that were subject

to confidentiality agreements (including Nucap's Terms or Use executed by several Bosch

engineers), and based on Bosch's repeated assurances that Nucap's drawings would be used only

for internal quality control requirements, that Bosch would maintain the confidentiality of

Nucap's drawings, and that Bosch would not disclose them to third parties or misappropriate

Nucap's drawings.  Nucap further states that it lacks knowledge or information sufficient to form

a belief as to the truth of the allegations in Paragraph 40 insofar as they relate to suppliers other

than Nucap.

41.    Based on the safety, quality, and pricing of the suppliers' products, Bosch orders the corresponding components needed for its customers, which are then assembled in one of Bosch's facilities located in either Juarez, Mexico or Shanghai, China.

**ANSWER:**     Nucap lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.

42.     The design packets are used at the assembly plants for quality control purposes and to ensure that the components properly fit together.  Design packets are not to be distributed outside of Bosch.

**ANSWER:**     Nucap lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42.

43.     The creation of design packets is custom and practice in the automotive industry.

**ANSWER:**     Nucap lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43.

44.     In the event that a supplier's information is included in the design packet, Bosch identifies the suppliers as the source of such information.

**ANSWER:**     Nucap lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44, except, on information and belief, Nucap states that Bosch has not consistently identified the supplier of the drawing and retained the appropriate confidentiality information when it reproduced supplier drawings, and that Bosch's own Director of Product Development and Senior Engineer (based in China) recognized this issue.  For example, in or around March 2013, Nucap expressed concern to Bosch that some of Nucap's drawings may have been disclosed and Bosch confirmed that its employees may have disclosed confidential information of Bosch's suppliers to third parties and without attribution of the design to Bosch's supplier and Bosch promised to remedy this issue.

45.     On March 25, 2013, Bosch formalized into writing its policy whereby all supplier information is to be clearly identified and maintained within Bosch-approved recipients.

**ANSWER:**     Nucap denies the allegations in Paragraph 45, except states that Bosch disclosed to at least one Nucap employee on or about March 26 that Bosch had in place a procedure "to preserve the supplier drawing," states that it lacks knowledge or information

16

sufficient to know whether Bosch followed any such procedure, but, on information and belief, denies that Bosch has always adhered to such procedure.

46.     On March 26, 2013, Bosch confirmed with Nucap that any information it provided to Bosch would be identified and preserved from unapproved distribution.

**ANSWER:**    Nucap admits that on March 26, 2013, Bosch told Nucap that any information Nucap provided to Bosch would be identified and preserved from unapproved distribution,

47.     Bosch is unaware of any specific instance where any Nucap information was improperly identified or distributed by Bosch.

**ANSWER:**    Nucap lacks knowledge or information sufficient to form a belief as to Bosch's state of mind, or as to the number of specific instances in which Nucap's drawings were misused or improperly disclosed, but Nucap expressly denies that Bosch did not misuse and improperly disclose Nucap's drawings and states, on information and belief, that Bosch knew that it was misusing and/or improperly disclosing Nucap's drawings.

48.     Bosch is not aware of any specific Nucap Drawing that was improperly identified or distributed by Bosch.

**ANSWER:**    Nucap lacks knowledge or information sufficient to form a belief as to Bosch's state of mind, or the number of specific instances that in which Nucap's drawings were misused or improperly disclosed, but Nucap expressly denies that Bosch did not misuse and improperly disclose Nucap's drawings and states, on information and belief, that Bosch knew that it was improperly identifying and/or distributing Nucap's drawings. .

49.     Bosch is not aware of any specific entity that was improperly given a Nucap Drawing by Bosch.

**ANSWER:**    Nucap lacks knowledge or information sufficient to form a belief as to Bosch's state of mind, or the number of specific instances that in which Nucap's drawings were misused or improperly disclosed, but Nucap expressly denies that Bosch did not improperly

disclose Nucap drawings to other entities and states, on information and belief, that Bosch knew that it was improperly disclosing Nucap drawings to other entities.

50.    Nucap cannot identify a specific instance where any Nucap information was improperly identified or distributed by Bosch.

**ANSWER:**    Nucap denies the allegations in Paragraph 50.  Nucap further states that in or around March 2013, Nucap expressed concern to Bosch that some of Nucap's drawings may have been disclosed and Bosch confirmed that its employees may have disclosed confidential information of Bosch's suppliers to third parties and without attribution of the design to Bosch's supplier.

51.    Nucap cannot identify a specific Nucap Drawing that was improperly identified or distributed by Bosch.

**ANSWER:**    Nucap denies the allegations in Paragraph 51.  Nucap further states that in or around March 2013, Nucap expressed concern to Bosch that some of Nucap's drawings may have been disclosed and Bosch confirmed that its employees may have disclosed confidential information of Bosch's suppliers to third parties and without attribution of the design to Bosch's supplier.

52.    Nucap cannot identify a specific entity that was improperly given a Nucap Drawing by Bosch.

**ANSWER:**    Nucap denies the allegations in Paragraph 52.  Nucap further states that in or around March 2013, Nucap expressed concern to Bosch that some of Nucap's drawings may have been disclosed and Bosch confirmed that its employees may have disclosed confidential information of Bosch's suppliers to third parties and without attribution of the design to Bosch's supplier.

ny-1199578

COUNT I
(Attempted Monopolization of Automotive Back Plate Market In
Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2)

53.     Bosch adopts and incorporates by reference each of the allegations in paragraphs 1-52 as if set forth fully in this Count I.

**ANSWER:**     Nucap incorporates by reference herein Nucap's responses to Paragraphs 1-52 above.  Nucap further states that it has moved to dismiss Count I of Bosch's Counterclaims, that no further response is required at this time, and that Nucap will respond consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion be denied.  Insofar as Paragraph 53 is incorporated by reference into Counts III through VII and a response is required, Nucap denies the allegations in Paragraph 53.

54.     There are two separate relevant product markets implicated by Nucap's misconduct alleged here:  the market for automotive backing plates and the market for automotive shims.  Backing plates and shims are separate products.

**ANSWER:**     Nucap states that it has moved to dismiss Count I of Bosch's Counterclaims, that no further response is required at this time, and that Nucap will respond consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion be denied.  Insofar as Paragraph 54 is incorporated by reference into Counts III through VII and a response is required, Nucap denies the allegations in Paragraph 54, except Nucap admits that backing plates and shims can be separately sold.

55.     The relevant product market for automotive backing plates, hereinafter "backing plates," consists of backing plates sold to automotive brake pad manufacturers for installation in aftermarket automotive brake pads.

**ANSWER:**     Nucap states that it has moved to dismiss Count I of Bosch's Counterclaims, that no further response is required at this time, and that Nucap will respond consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

19

ny-1199578

be denied. Insofar as Paragraph 55 is incorporated by reference into Counts III through VII and a response is required, Nucap denies the allegations in Paragraph 55.

56.     The relevant product market for automotive shims, hereinafter "shims," consists of shims sold to automotive brake pad manufacturers for installation in aftermarket automotive brake pads.

**ANSWER:**     Nucap states that it has moved to dismiss Count I of Bosch's Counterclaims, that no further response is required at this time, and that Nucap will respond consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion be denied. Insofar as Paragraph 56 is incorporated by reference into Counts III through VII and a response is required, Nucap denies the allegations in Paragraph 56.

57.     The relevant geographic markets for both backing plates and shims are the United States.

**ANSWER:**     Nucap states that it has moved to dismiss Count I of Bosch's Counterclaims, that no further response is required at this time, and that Nucap will respond consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion be denied. Insofar as Paragraph 57 is incorporated by reference into Counts III through VII and a response is required, Nucap denies the allegations in Paragraph 57.

58.     Up until recently, Nucap was the only "complete catalog" commercial source of supply of shims in the United States, and there was no shim manufacturer capable of supplying a full catalog of shims to Bosch in the United States.

**ANSWER:**     Nucap states that it has moved to dismiss Count I of Bosch's Counterclaims, that no further response is required at this time, and that Nucap will respond consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion be denied. Insofar as Paragraph 58 is incorporated by reference into Counts III through VII and a response is required, Nucap denies the allegations in Paragraph 58, except Nucap admits, on information and belief, that Nucap had the most comprehensive library of shim designs.

59.     Nucap's anti-competitive conduct, in violation of 15 U.S.C. § 2, is a willful attempt to acquire and exert monopoly power.  Nucap has attempted to acquire and exert monopoly power in the market for backing plates in the United States by:

- conditioning the sale of its shims to Bosch on Bosch's purchase of backing plates from Nucap;

- refusing to sell its shims to Bosch for the sole reason that Bosch stopped buying its backing plates from Nucap;

- refusing to fulfill Bosch's purchase orders for shims for which Defendant Bosch had paid Nucap at the time it placed its orders; and

- refusing to deliver to Bosch $7 million of dedicated Bosch products; and,

- increasing the barriers to entry facing backing plate manufacturers that attempt to sell backing plates to Bosch in competition with Nucap by forcing its rivals and/or Bosch to develop an alternate source of supply for shims.

**ANSWER:**     Nucap states that it has moved to dismiss Count I of Bosch's

Counterclaims, that no further response is required at this time, and that Nucap will respond

consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

be denied.  Insofar as Paragraph 59 is incorporated by reference into Counts III through VII and

a response is required, Nucap denies the allegations in Paragraph 59.

60.     As a result of its anticompetitive actions, Nucap was and is able to charge supra-competitive prices for its backing plates in the United States.  Nucap's backing plate prices were and are significantly higher than those charged by Util China and Ruiyang Automotive Materials Co. Ltd.

**ANSWER:**     Nucap states that it has moved to dismiss Count I of Bosch's

Counterclaims, that no further response is required at this time, and that Nucap will respond

consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

be denied. Insofar as Paragraph 60 is incorporated by reference into Counts III through VII and a

response is required, Nucap denies the allegations in Paragraph 60.

61.     Bosch has been injured by Nucap's refusal to sell shims to it.

**ANSWER:**    Nucap states that it has moved to dismiss Count I of Bosch's

Counterclaims, that no further response is required at this time, and that Nucap will respond

consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

be denied. Insofar as Paragraph 61 is incorporated by reference into Counts III through VII and a

response is required, Nucap denies the allegations in Paragraph 61.

62.    Through its actions described above, Nucap acted with specific intent to
monopolize the relevant market of backing plates in the United States.

**ANSWER:**    Nucap states that it has moved to dismiss Count I of Bosch's

Counterclaims, that no further response is required at this time, and that Nucap will respond

consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

be denied.  Insofar as Paragraph 62 is incorporated by reference into Counts III through VII and

a response is required, Nucap denies the allegations in Paragraph 62.

63.    Through its actions described above, Nucap created a dangerous probability of
achieving a monopoly in the relevant market for backing plates in the United States, in violation
of 15 U.S.C. § 2.

**ANSWER:**    Nucap states that it has moved to dismiss Count I of Bosch's

Counterclaims, that no further response is required at this time, and that Nucap will respond

consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

be denied.  Insofar as Paragraph 63 is incorporated by reference into Counts III through VII and

a response is required, Nucap denies the allegations in Paragraph 63.

64.    The conduct described in this complaint, supra, impacted competition.  The
conduct described in the complaint impacted interstate commerce.

**ANSWER:**    Nucap states that it has moved to dismiss Count I of Bosch's

Counterclaims, that no further response is required at this time, and that Nucap will respond

consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

be denied.  Insofar as Paragraph 64 is incorporated by reference into Counts III through VII and

a response is required, Nucap denies the allegations in Paragraph 64.

65.     Nucap's conduct has proximately caused damages to Bosch in an amount to be
determined at trial but anticipated to be in excess of $30,000,000 to compensate Bosch for its
actual damages of $10,000,000, treble damages pursuant to Section 4 of the Clayton Act (15
U.S.C. § 15), together with reasonable attorney's fees, court costs, and interest.

**ANSWER:**     Nucap states that it has moved to dismiss Count I of Bosch's

Counterclaims, that no further response is required at this time, and that Nucap will respond

consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

be denied.  Insofar as Paragraph 65 is incorporated by reference into Counts III through VII and

a response is required, Nucap denies the allegations in Paragraph 65.

66.     Bosch seeks: (a) the aforementioned damages; (b) injunctive relief to enjoin
Nucap from conditioning the sale of its backing plates to Bosch on Bosch's purchase of shims
from Nucap; and (c) any and all other relief that this Court deems necessary and proper.

**ANSWER:**     Nucap states that it has moved to dismiss Count I of Bosch's

Counterclaims, that no further response is required at this time, and that Nucap will respond

consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

be denied.  Insofar as Paragraph 66 is incorporated by reference into Counts II through VII and a

response is required, Nucap denies the allegations in Paragraph 66, except admits that Bosch

purports to seek the stated relief.  Nucap denies that Bosch is entitled to any such relief.

<u>COUNT II</u>
(Attempted Monopolization of Automotive Backing Plate Market In
Violation of Section 3 of The Illinois Antitrust Act, 740 ILCS 10/3)

67.     Bosch adopts and incorporates by reference each of the allegations in paragraphs
1-66 as if set forth fully in this Count II.

**ANSWER:**     Nucap incorporates by reference herein its responses to Paragraphs 1-66

above.  Nucap further states that it has moved to dismiss Count II of Bosch's Counterclaims, that

no further response is required at this time, and that Nucap will respond consistent with its

obligations under the Federal Rules of Civil Procedure should Nucap's motion be denied.

Insofar as Paragraph 67 is incorporated by reference into Counts III through VII and a response

is required, Nucap denies the allegations in Paragraph 67.

68. Through its actions described above, Nucap established, maintained, used, and attempted to acquire monopoly power over the relevant market in backing plates for the purpose of excluding competition in such trade and commerce within the State of Illinois in violation of 740 ILCS 10/3.

**ANSWER:** Nucap states that it has moved to dismiss Count II of Bosch's

Counterclaims, that no further response is required at this time, and that Nucap will respond

consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

be denied. Insofar as Paragraph 68 is incorporated by reference into Counts III through VII and

a response is required, Nucap denies the allegations in Paragraph 68.

69. A substantial portion of Nucap's behavior constituting the violations alleged above occurred in the State of Illinois and has had a substantial impact on trade or commerce within the State of Illinois.

**ANSWER:** Nucap states that it has moved to dismiss Count II of Bosch's

Counterclaims, that no further response is required at this time, and that Nucap will respond

consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

be denied. Insofar as Paragraph 69 is incorporated by reference into Counts III through VII and

a response is required, Nucap denies the allegations in Paragraph 69.

70. As a direct and proximate result of Nucap's conduct, Bosch has suffered, and will continue to suffer, substantial injury in the State of Illinois.

**ANSWER:** Nucap states that it has moved to dismiss Count II of Bosch's

Counterclaims, that no further response is required at this time, and that Nucap will respond

consistent with its obligations under the Federal Rules of Civil Procedure should Nucap's motion

be denied. Insofar as Paragraph 70 is incorporated by reference into Counts III through VII and

a response is required, Nucap denies the allegations in Paragraph 70.

<u>COUNT III</u>
(Deceptive Practices in Violation of the Illinois Consumer Fraud and
Deceptive Business Practices Act, 815 ILCS 505/1 et seq.)

71.     Bosch adopts and incorporates by reference each of the allegations in paragraphs
1-70 as if set forth fully in this Count III.

**<u>ANSWER:</u>**     Nucap incorporates by reference herein its responses to Paragraphs 1-70

above.

72.     At all times relevant hereto, the Illinois Consumer Fraud and Deceptive Practices
Act, 815 ILCS 505/1 et seq., was in full force and effect.

**<u>ANSWER:</u>**     Nucap admits the allegations in Paragraph 72.

73.     Section 2 of that statute provides, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices,
> including but not limited to the use of or employment of any deceptive,
> fraud, false pretense, false promise, misrepresentation or the concealment,
> suppression, or omission of any material fact, with intent that others rely
> upon the concealment, suppression or omission of such material fact, or
> the use of employment of any practice described in Section 2 of the
> "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in
> the conduct of any trade or commerce are hereby declared unlawful
> whether any person has in fact been misled, deceived or damaged thereby.
> In construing this section consideration shall be given to the
> interpretations of the Federal Trade Commission and the federal courts
> relating to Section 5(a) of the Federal Trade Commission Act.

**<u>ANSWER:</u>**     Nucap denies that Bosch has accurately reproduced Section 2 of the

Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq*., but Nucap admits

that the Illinois Consumer Fraud and Deceptive Practices Act includes certain provisions and

refers to that Act for its contents.

74.     Bosch has standing under the statute given that Nucap's practices were addressed
to the brake pad component market generally and/or otherwise implicate consumer protection
concerns.  Nucap's failure to fulfill purchase orders from Bosch to which it had already agreed
impacted the price of after-market brake pads and, as discussed above, reflected Nucap's intent
to monopolize the brake pad backing plate market.

**<u>ANSWER:</u>**     Nucap denies the allegations in Paragraph 74

75.     Nucap acted deceptively in demanding and accepting pre-payment for purchase orders that it had no intention of fulfilling and, in fact, refused to fulfill.  Nucap's deception occurred in the course of conduct involving trade or commerce.

**ANSWER:**     Nucap denies the allegations in Paragraph 75.

76.     Bosch relied on Nucap's representation that it would fulfill those purchase orders when it issued them.

**ANSWER:**     Nucap denies the allegations in Paragraph 76.

77.     Nucap was at all times acting in bad faith and intended Bosch to rely on Nucap's false promises and representations.

**ANSWER:**     Nucap denies the allegations in Paragraph 77.

78.     Bosch has been damaged as a proximate result of Nucap's course of conduct and violation of the Illinois Consumer Fraud and Deceptive Practices Act in an amount to be determined at trial, together with punitive damages, reasonable attorney's fees, court costs, and interest, and for any and all other relief that this Court deems necessary and proper.

**ANSWER:**     Nucap denies the allegations in Paragraph 78.

<div align="center">

COUNT IV
(Unjust Enrichment)

</div>

79.     Bosch adopts and incorporates by reference each of the allegations in paragraphs 1-78 as if set forth fully in this Count IV.

**ANSWER:**     Nucap incorporates by reference herein its responses to Paragraphs 1-78 above.

80.     By virtue of having collected payment from Bosch for purchase orders that Nucap never fulfilled, Nucap unjustly retained a benefit to the detriment of Bosch.

**ANSWER:**     Nucap denies the allegations in Paragraph 80.

81.     Nucap's retention of the above-described payment for unfulfilled purchase orders violates the fundamental principles of justice, equity, and good consequence.

**ANSWER:**     Nucap denies the allegations in Paragraph 81.

82.     As a direct and proximate result of the foregoing, Bosch has been damaged in an amount to be determined at trial.

**ANSWER:**     Nucap denies the allegations in Paragraph 82.

<div align="center">

26

</div>

<u>COUNT V</u>
(Tortious Interference with Business Expectancy)

83.     Bosch adopts and incorporates by reference each of the allegations in paragraphs 1-82 as if set forth fully in this Count V.

**ANSWER:**     Nucap incorporates by reference herein its responses to Paragraphs 1-82 above.

84.     For nearly twenty years, Bosch (through its predecessor Morse) has had a business relationship with Autozone, a large national retailer, to supply aftermarket automotive braking systems for the ultimate sale and installation in individual consumer's vehicles.

**ANSWER:**     Nucap lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84, except that Nucap admits, on information and belief, that Bosch has sold brake pads to Autozone.

85.     The business relationship between Bosch and Autozone has a reasonable likelihood of future economic benefit to Bosch.

**ANSWER:**     Nucap lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85.

86.     Nucap knew of the business relationship between Bosch and Autozone and the likelihood of future economic benefit from that relationship for many years.

**ANSWER:**     Nucap denies the allegations in Paragraph 86, except Nucap admits that it came to understand that Bosch supplied certain brake pads to Autozone.

87.     Nucap intentionally interfered with the business relationship between Bosch and Autozone by suddenly and without justification refusing to sell shims and certain backing plates to Bosch.

**ANSWER:**     Nucap denies the allegations in Paragraph 87.

88.     Nucap intentionally interfered with the business relationship between Bosch and Autozone by failing to timely delivery to Bosch all ordered quantities for Bosch to maintain its exceptional service level performance.

**ANSWER:**     Nucap denies the allegations in Paragraph 88.

89.     This interference was tortious because it was unlawful and without any legitimate business purpose.

**ANSWER:**     Nucap denies the allegations in Paragraph 89.

90.     Nucap's conduct caused disruption to the business relationship between Bosch and Autozone.

**ANSWER:**     Nucap denies the allegations in Paragraph 90.

91.     As a result of Nucap's interference, Bosch has suffered and will continue to suffer substantial damages, including, but not limited to, many millions of dollars of service level fines, damage to Bosch's reputation and lost business to its key retail customers.

**ANSWER:**     Nucap denies the allegations in Paragraph 91.

<div align="center">

COUNT VI
(Breach of Contract)

</div>

92.     Defendant Bosch adopts and incorporates by reference each of the allegations in paragraphs 1-91 as if set forth fully in this Count VI.

**ANSWER:**     Nucap incorporates by reference herein its answers to Paragraphs 1-91 above.

93.     Bosch issues purchase orders to Nucap for the supply of backing plates and shims which are subject to Bosch's North American Terms and Conditions (the "POTCs").

**ANSWER:**     Nucap denies the allegations in Paragraph 93, except admits that Bosch has issued purchase orders to Nucap for backing plates and shims. Nucap specifically denies that those purchase orders were subject to Bosch's Terms and Conditions and states that Nucap expressly rejected Bosch's Terms and Conditions.

94.     Nucap agreed to fill the purchase orders and be subject to the POTCs referenced in said purchase orders.

**ANSWER:**     Nucap denies the allegations in Paragraph 94, except admits that Nucap filled certain purchase orders issued by Bosch for backing plates and shims. Nucap specifically denies that it ever agreed that any purchase orders were subject to Bosch's Terms and Conditions and states that Nucap expressly rejected Bosch's Terms and Conditions.

<div align="center">

28

</div>

ny-1199578

95.     Bosch fully performed its obligations under the purchase orders and the POTCs issued to Nucap.

**ANSWER:**     Nucap denies the allegations in Paragraph 95 on the ground that Bosch's purchase orders were not subject to the Bosch Terms & Conditions, and states that Nucap expressly rejected Bosch's Terms & Conditions.

96.     On November 10, 2014, Nucap informed Bosch that it would not fill the purchase orders as agreed and that "Nucap was placing Bosch on a complete business pause."

**ANSWER:**     Nucap denies the allegations of Paragraph 96, except admits that on November 10, 2014, Montu Khokhar sent an email to Christopher Thornton stating, *inter alia*, that Nucap was "placing Bosch on a complete business pause," and Nucap refers to that communication for its contents.  Nucap further states that Nucap so informed Bosch after Bosch suddenly and without warning told Nucap that it was reducing its expected 2015 backing late orders by approximately 85%.  Bosch's sudden and massive reduction in backing plate orders came after Nucap's refusal to supply Bosch with inferior quality "black steel" backing plates that Nucap believed, and continues to believe, compromise quality, performance, and customer safety.

97.     Also on November 10, 2014, Nucap required that Bosch pay "all outstanding amounts immediately."

**ANSWER:**     Nucap denies the allegations of Paragraph 97, except admits that on November 10, 2014, Montu Khokhar sent an email to Christopher Thornton stating, *inter alia*, that "[p]rior to providing any feedback on Chris Thornton's email, Nucap requires that Bosch pay all outstanding amounts immediately," and refers to that communication for its contents.  Nucap further states that Nucap so informed Bosch promptly after Bosch suddenly and without warning told Nucap that it was reducing its expected 2015 backing late orders by approximately 85%.  Bosch's sudden and massive reduction in backing plate orders came after Nucap's refusal

29

to supply Bosch with inferior quality "black steel" backing plates that Nucap believed, and continues to believe, compromise quality, performance, and customer safety.

98.    Nucap refused to ship products to Bosch in accordance with the outstanding purchase orders – until Bosch paid all outstanding invoices that were weeks from being due, stating "we can connect after the funds are received."

**ANSWER:**    Nucap denies the allegations of Paragraph 98, except that Nucap admits that it communicated to Bosch that it was placing Bosch on a "business pause" and required that "Bosch pays all outstanding amounts immediately" in response to Bosch's conduct and the proposed change in the parties' relationship, including Bosch's drastic reduction of projected backing plate orders.

99.    Bosch reluctantly agreed to arrange for the immediate payment of over three (3) million dollars for the products Nucap was "holding hostage."

**ANSWER:**    Nucap denies the allegations of Paragraph 99, except Nucap states that it is without knowledge or information sufficient to form a belief as to whether Bosch "reluctantly agreed" to arrange for any payment, and admits that Bosch agreed to make a payment to Nucap of approximately $3 million subject to certain proposed terms.

100.    After Bosch agreed to pay the last minute payment, Nucap changed terms again, refused to accept payment and continually refused to ship products to Bosch.

**ANSWER:**    Nucap denies the allegations in Paragraph 100.  9.

101.    Nucap was already aware of the harm to Bosch due to Nucap's failure to deliver products; specifically Nucap knew of the millions of dollars of service level fines and closed lines at Bosch's facilities directly resulting from Nucap's breach.

**ANSWER:**    Nucap denies the allegations in Paragraph 101.

102.    Thus, as a direct and proximate result of Nucap's material breach of contract, Bosch has been damaged and will continue to be damaged in a specific amount to be proven at the trial.

**ANSWER:**    Nucap denies the allegations in Paragraph 102.

<u>COUNT VII</u>
(Breach of Implied-in-Fact Contract,
Breach of Covenant of Good Faith and Fair Dealing)

103.    Defendant Bosch adopts and incorporates by reference each of the allegations in paragraphs 1 through 102 as if set forth fully in this Count VII.

**ANSWER:**    Nucap incorporates by reference herein its responses to Paragraphs 1-102 above.

104.    As described above, Nucap and Bosch had an implied-in-fact contract for the purchase of brake pad backing plates as established by their course of dealing:  Bosch issued purchase orders containing the POTCs referenced above; Bosch paid Nucap for the backing plates described in those purchase orders; and Nucap manufactured and delivered to Bosch the backing plates described in those purchase orders.

**ANSWER:**    Nucap denies the allegations in Paragraph 104, except admits that Bosch issued purchase orders for certain Brake Components, that Nucap manufactured and delivered certain Brake Components to Bosch, and that Bosch paid Nucap for certain Brake Components.

105.    The parties intended to have a continuing business relationship in the supply of automotive aftermarket braking systems.

**ANSWER:**    Nucap denies the allegations in Paragraph 105, except Nucap admits that it intended to continue to work with Bosch to bring to market brake pads made using high quality, high performance, and safe backing plates and shims and at all times worked in good faith with Bosch toward that objective; Nucap lacks knowledge or information sufficient to form a belief as to Bosch's state of mind, except Nucap states that, beginning no later than 2013, Bosch repeatedly demanded that Nucap supply Bosch with lower-cost backing plates made out of inferior "black steel" which backing plates Nucap believed, and continues to believe, compromise quality, performance, and customer safety.

106.    The parties intended to deal with each other in good faith and fairly and not intentionally cause harm to each other's business.

31

**ANSWER:** Nucap lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106, except Nucap admits that it intended to continue to work with Bosch to bring to the market brake pads made using high quality, high performance, and safe backing plates and shims and at all times worked in good faith with Bosch toward that objective. Nucap further states that, beginning no later than 2013, Bosch repeatedly demanded that Nucap supply Bosch with lower-cost backing plates made out of inferior "black steel" which backing plates Nucap believed, and continues to believe, compromise quality, performance, and customer safety.

107. Bosch fully performed its obligations under the purchase orders issued to Nucap.

**ANSWER:** Nucap states that the allegations in Paragraph 107 are not comprehensible and purport to state a legal conclusion and, for that reason, Nucap denies the allegations in Paragraph 107.

108. On November 10, 2014, Nucap informed Bosch that it would not fill the purchase orders as agreed under the implied-in-fact contract and told Bosch that "Nucap was placing Bosch on a complete business pause."

**ANSWER:** Nucap denies the allegations in Paragraph 108, except admits that except admits that on November 10, 2014, Montu Khokhar sent an email to Christopher Thornton stating, *inter alia*, that Nucap was "placing Bosch on a complete business pause," and Nucap refers to that communication for its contents. Nucap further states that Nucap so informed Bosch promptly after Bosch suddenly and without warning told Nucap that it was reducing its expected 2015 backing late orders by approximately 85%. Bosch's sudden and massive reduction in backing plate orders came after Nucap's refusal to supply inferior quality "black steel" backing plates that Nucap believed, and continues to believe, compromise quality, performance, and customer safety.

32

109.    Nucap refused to ship products to Bosch in accordance with implied-in-fact contract until Bosch paid all outstanding invoices that were weeks from being due, stating "we can connect after the funds are received."

**ANSWER:**    Nucap denies the allegations of Paragraph 109, except that Nucap admits that it communicated to Bosch that it was placing Bosch on a "business pause" and required that "Bosch pays all outstanding amounts immediately" in response to Bosch's conduct and the proposed change in the parties' relationship, including Bosch's drastic reduction of projected backing plate orders.

110.    Bosch reluctantly agreed to arrange for the immediate payment for the products Nucap was "holding hostage."

**ANSWER:**    Nucap denies the allegations of Paragraph 110, except Nucap states that it is without knowledge or information sufficient to form a belief as to whether Bosch "reluctantly agreed" to arrange for any payment, and admits that Bosch agreed to make a payment to Nucap of approximately $3 million subject to certain proposed terms.

111.    After Bosch agreed to pay the last minute payment, Nucap changed terms again, refused to accept payment and continually refused to ship products to Bosch.

**ANSWER:**    Nucap denies the allegations in Paragraph 110.

112.    Nucap was already aware of the harm to Bosch due to Nucap's failure to deliver products under the implied-in-fact contract, including, but not limited to, millions of dollars of service level fines, damage to Bosch's reputation and lost business to its key retail customers.

**ANSWER:**    Nucap denies the allegations in Paragraph 112. .

113.    Thus, as a direct and proximate result of Nucap's breach of the implied-in-fact contract, Bosch has been damaged and will continue to be damaged in a specific amount to be proven at the trial.

**ANSWER:**    Nucap denies the allegations in Paragraph 113.

33

<u>RESPONSE TO PRAYER FOR RELIEF</u>

Nucap denies that Bosch is entitled to any relief in this action and asks the Court to deny any and all relief requested by Bosch in its Counterclaims.

## **AFFIRMATIVE DEFENSES**

Nucap asserts the following affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, without admitting or acknowledging that it bears the burden of proof as to any affirmative defense.[2]

### **First Defense**

Counts III – VII of Bosch's Counterclaims fail to state a claim upon which relief may be granted.

### **Second Defense**

Counts III – VII of Bosch's Counterclaims are barred, in whole or in part, by the doctrines of waiver, consent, acquiescence, laches, estoppel, and/or unclean hands.

### **Third Defense**

To the extent that Bosch has suffered damages, those damages were not caused by Nucap, but were caused by the actions of Bosch itself or others.

### **Fourth Defense**

To the extent that Bosch suffered damages, Bosch has failed to take reasonable steps to protect itself from the damages alleged in the Counterclaims and has failed to mitigate any such damages.

---

[2] Nucap, as noted above, has moved to dismiss Counts I and II of Bosch's Counterclaims and does not, therefore, set forth its Affirmative Defenses to those Counterclaims herein. Should Nucap's motion to dismiss be denied, Nucap will respond to Counts I and II of Bosch's Counterclaims, and assert any affirmative defenses thereto, consistent with Nucap's obligations under the Federal Rules of Civil Procedure.

**Fifth Defense**

Count's III – VII of Bosch's Counterclaims are barred, in whole or in part, because Bosch materially breached its obligations under any alleged agreements identified in the Counterclaims and Nucap's performance is therefore excused.

**Sixth Defense**

Nucap's actions with regard to Bosch were conducted in good faith and without fraud, oppression, or malice toward Bosch or Bosch's rights, thereby precluding any and all claims for enhanced damages.

**Seventh Defense**

Bosch fails to state facts sufficient to constitute a claim for attorneys' fees.

**Eighth Defense**

Bosch is not entitled to any injunctive relief because Bosch has adequate remedies at law for the claims and injuries alleged therein and/or because the alleged conduct which Bosch seeks to enjoin is neither actively occurring nor threatened.

**Ninth Defense**

Bosch has not suffered any damages as a result of any actions taken by Nucap, and Bosch is thus barred from asserting any cause of action against Nucap.

**Tenth Defense**

If Bosch suffered any damages, which Nucap denies, Bosch is barred from recovering under their Counterclaims, in whole or in part, because Bosch's damages, if any, are vague, uncertain, imaginary and speculative.

**Eleventh Defense**

Bosch is barred from recovering under the Counterclaims, in whole or in part, because Bosch did not reasonably rely on, or rely on at all, any alleged act, statements, or omissions by Nucap.

ny-1199578

### Twelfth Defense

Nucap's actions alleged in the Counterclaims were at all times reasonable, privileged and justified.

### RESERVATION OF RIGHTS

Nucap has not knowingly or intentionally waived any applicable defenses, and specifically reserves the right to assert any and all defenses, affirmative or otherwise, that may become available through information developed in discovery, at trial, or otherwise.

### PRAYER FOR RELIEF

Nucap respectfully prays as follows:

A.     That Bosch take nothing by reason of its Counterclaims, that the Counterclaims be dismissed with prejudice, and that judgment be entered in favor of Nucap and against Bosch.

B.     That Nucap be awarded its costs and attorneys' fees' incurred in connection in this action pursuant at least to 815 ILCS 505/10a(c); and

C.     For such other and further relief as the Court deems just and proper.

36

Dated: August 10, 2015
<div style="margin-left:40%">

Respectfully submitted,

NUCAP INDUSTRIES, INC. AND NUCAP U.S. INC.

By:  /s/ Kyle W. K. Mooney, Esq.
    One of Their Attorneys

Michael A. Jacobs, Esq., *pro hac*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Phone:  (415) 268-7455
Fax:  (415) 268-7522
Email:  mjacobs@mofo.com

Kenneth Kuwayti, Esq.,  *pro hac*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
Phone:  (650) 813-5688
Fax:  (650) 494-0792
Email:  kkuwayti@mofo.com

Kyle W. K. Mooney, Esq., *pro hac*
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Phone:  (212) 336-4092
Fax:  (212) 468-7900
Email:  kmooney@mofo.com

Kenneth E. Kraus
Todd H. Flaming
KrausFlaming LLC
20 South Clark Street
Suite 2620
Chicago, Illinois  60603
Phone: (312) 447-7217
Fax: (312) 236-9201
Email:  todd@krausflaming.com

*Attorneys for Plaintiff Nucap*
*Industries Inc. and Nucap U.S. Inc.*
</div>

37

<u>CERTIFICATE OF SERVICE</u>

I, Kyle W. K. Mooney, certify that on August 10, 2015, I filed the foregoing PLAINTIFFS AND COUNTERCLAIM DEFENDANTS NUCAP INDUSTRIES INC. AND NUCAP US INC.'S ANSWER TO COUNTS III – VII OF BOSCH'S COUNTERCLAIMS, using the Court's CM/ECF system, whereby all counsel of record were served.


/s/ Kyle W. K. Mooney_____
Kyle W. K. Mooney, Esq.

38