**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NUCAP INDUSTRIES INC. and NUCAP US INC., | ) ) ) | No. 15 CV 2207 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| ROBERT BOSCH LLC, BOSCH BRAKE COMPONENTS LLC, and ROBERT BOSCH GMBH, | ) ) ) ) ) | |
| Defendants. | ) ) | December 7, 2017 |

**MEMORANDUM OPINION and ORDER**

Before the court is Defendants' motion for a protective order barring the deposition of Volkmar Denner, Chairman of the Board of Management of Defendant Robert Bosch GmbH ("Bosch GmbH"). For the following reasons, the motion is granted without prejudice to Plaintiffs seeking leave to re-notice Denner's deposition if and when they can demonstrate a need for it:

**Background**

The facts in this case are set forth in previous orders resolving the parties' motions for summary judgment and motions to dismiss, so the court need not repeat them at length here. *See Nucap Indus., Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 1197104, at *2-6 (N.D. Ill. Mar. 31, 2017); *see also Nucap Indus., Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 3581174, at *1-5 (N.D. Ill. Aug. 18, 2017). Briefly, Plaintiffs sold brake components to Defendants from 2008 until their business relationship soured and came to an end in November 2014. *See Nucap*

*Indus.*, 2017 WL 1197104, at \*2-3. The parties have differing views on what led

Bosch GmbH, a German limited liability company and indirect parent of Robert

Bosch, LLC ("Bosch") and Bosch Brake Components, LLC ("Bosch Brake"), to

terminate their relationship. (See R. 961, Pls.' Opp. at 2.) According to Plaintiffs,

Defendants' decision to end the parties' business dealings in 2014 "is central to the

claims, counterclaims, and defenses in this case[,]" and Plaintiffs argue that Denner

is likely to have knowledge on this topic. (Id. at 4.) Defendants contend that

Denner has no relevant and unique personal knowledge relating to Plaintiffs' claims

and that any such information can be obtained through less burdensome means.

(R. 914, Defs.' Mot. at 1-2; R. 978, Defs.' Reply at 2.)

**Analysis**

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery

regarding any non-privileged matter that is relevant to any party's claim or

defense," and public policy favors disclosure of relevant materials. *See Patterson v.

Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Rule 26(c)(1) also allows

district courts to issue a protective order limiting discovery to protect a party from

oppression, undue burden, or expense for good cause. Before doing so, the court

must consider the totality of the circumstances and weigh the value of the material

sought against the burden of providing it. *Patterson*, 281 F.3d at 681 (citations

omitted).

When it comes to determining who bears the burden of showing good cause in

the case of deposing high-level executives, federal courts have adopted varying

approaches.  *See* Iain D. Johnston, *Apex Witnesses Claim They Are Too Big to Depose*, Litigation, American Bar Association, Vol. 41, No. 1 (Fall 2014), *available at* https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/johnston/apexwit nessdepose.pdf ("*Apex Witnesses*") (collecting cases).  Bosch GmbH asserts that Plaintiffs bear the burden of showing both that Denner is likely to possess relevant, unique personal knowledge and that less intrusive avenues of discovery have been exhausted.  (R. 914, Defs.' Mot. at 3-5.)  Meanwhile Plaintiffs argue that Bosch GmbH has the burden of demonstrating that "extraordinary circumstances" justify granting a protective order.  (R. 961, Pls.' Opp. at 2 (internal quotation marks omitted).)  Both parties seek to apply the "apex doctrine," a framework used by some courts to analyze whether to allow the depositions of high-ranking senior executives or officials.  *See, e.g., Finisar Corp v. Nistica, Inc.*, No. 13-3345, 2015 WL 3988132, at *1 (N.D. Cal. June 30, 2015); *Powertech Tech., Inc. v. Tessera, Inc.*, No. 11-6121, 2013 WL 3884254, at *1 (N.D. Cal. July 26, 2013).

Although the Seventh Circuit has not formally adopted the apex doctrine, both parties cite to *Patterson* in support of their position.  In *Patterson*, the Seventh Circuit noted that deposing "a high-ranking executive in a multinational corporation . . . would have been a quite costly and burdensome means" for determining whether he had information bearing on the claims in the case.  281 F.3d at 681.  The *Patterson* court also observed in that case that the plaintiff seeking to depose the executive failed to take advantage of an "inexpensive, convenient method of discovery, i.e., interrogatories," which casted "serious doubt"

over her claim that the executive had information "that was more than marginally relevant to her civil action." *Id.* at 682 (citations omitted). After considering these factors and the relatively small amount in controversy, the *Patterson* court affirmed the district court's decision not to permit the deposition. *Id.*

According to Bosch GmbH, *Patterson* mandates that Denner, an "apex employee," must be protected from having to sit for a deposition unless Plaintiffs can first prove he has unique, non-cumulative, first-hand relevant knowledge that cannot be obtained by other less intrusive means. (See R. 914, Defs.' Mot. at 3-4.) But this view misreads *Patterson* and contradicts the well-established principle that the party seeking protection from discovery bears the burden of presenting "a particular and specific demonstration of fact" as to the need for that protection. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (citations omitted); *see also Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337, 341 (N.D. Ill. 2007) ("[Rule 26] puts the burden on the party seeking the protective order to show some plainly adequate reason for its issuance."); *Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007) ("The burden to show good cause is on the party seeking the protective order." (citation omitted)). Rather than shifting the burden to the party seeking discovery, *Patterson* merely acknowledged that when weighing the value of the material sought against the burden of providing it, courts may consider an employee's "apex" position and whether less burdensome alternatives are available. *See Patterson*, 281 F.3d at 681-82. As such, rather than establishing hard and fast requirements, *Patterson* confirmed the idea that a court should be sensitive to the risk of abuse

where an executive has no real information, and as with any other protective order, "should look for guidance to a balance of the likelihood of oppression or harassment compared to the value of the inquiry in generating important information." *See Dyson, Inc. v. Sharkninja Operating LLC*, No. 14 CV 779, 2016 WL 1613489, at *1 (N.D. Ill. April 22, 2016) (citation omitted).

Bearing this in mind, the court considers the specific reasons Bosch GmbH provides for why there is good cause for a protective order. First, according to Bosch GmbH, Denner had no involvement in the actions giving rise to Plaintiffs' claims. (R. 914, Defs.' Mot. at 1.) Bosch GmbH further contends that less burdensome avenues, such as issuing written discovery and deposing other witnesses, are available to Plaintiffs for obtaining the information they seek from Denner. (Id. at 9-13.) Finally, Bosch GmbH argues that sitting for a deposition would be unduly burdensome and would significantly disrupt Denner's company obligations. (Id. at 13.) The court addresses each of these reasons in turn.

## A.   Denner's Lack of Involvement

The court finds Bosch GmbH's evidence that Denner was not involved in the events at issue persuasive. First, Bosch GmbH asserts, and Plaintiffs do not dispute, that Denner "is not identified as an author, sender or recipient of even a single pre-litigation document . . . of the nearly 3 million pages of documents exchanged thus far[.]" (R. 914, Defs.' Mot. at 1.) Plaintiffs also do not dispute that no other witnesses have suggested that Denner was involved with, or has knowledge regarding, the central issues in the case. To support its argument, Bosch

5

GmbH attaches deposition transcript excerpts from key employees of Defendants Bosch and Bosch Brake who testified to their lack of contact with Denner.  (Id., Exs. E & F.)  Bosch GmbH also includes affidavits from Lutz Marschall, President of Bosch Brake, and Eckhard Lichtenthaler, Senior Vice President of the Automotive Aftermarket Brake Components ("AA-BC") business unit of Bosch GmbH, attesting to the fact that Denner was not involved in decisions regarding Defendants' business relationship with Plaintiffs, and that they had no conversations with Denner prior to the lawsuit about that relationship or Defendants' efforts to purchase brake components from another group of companies. (See id., Exs. I & J.)  Rather than making "stereotyped and conclusory statements" regarding Denner's limited involvement, Bosch GmbH has provided specific support for its assertion that Denner does not have relevant information.

Plaintiffs attempt to counter Bosch GmbH's showing by citing to an email from Marschall regarding the parties' deteriorating relationship, a letter from Lichtenthaler with Denner's name in the footer, Denner's online bio, a press release issued after this suit was filed, and Defendants' counterclaims alleging that Plaintiffs ceased product shipments "without justification" and "in order to cause Bosch financial and reputational distress."  (R. 961, Pls.' Opp. at 5-6.)  However, the court is unconvinced that this evidence shows Denner has more than a remote relationship to the claims in this case.  As an initial matter, it is unclear why Defendants' reasoning for ending their business relationship with Plaintiffs is "central to the claims, counterclaims, and defenses in this case" as Plaintiffs allege.

(See R. 961, Pls.' Opp. at 4.)  The court recently held that at this stage in the proceedings, information regarding the safety of certain brake components and their alleged role in the dissolution of contractual relations between the parties is irrelevant.  (See R. 951.)  But even if the court ultimately determines that such information is in fact relevant as Plaintiffs urge in their objection to the court's order, (R. 956), the evidence Plaintiffs rely on does little to show that Denner has that information.  Plaintiffs cite an email from Marschall to Ray Arbesman, Chairman and Owner of Nucap Industries, stating that the parties' endangered relationship was a topic that "ha[d] reached board level in Germany."  (R. 961, Pls.' Opp. at 5.)  However, this vague language does not implicate Denner's direct involvement in the matter, nor does it identify which board Marschall is referring to and what is meant by "reached."  (See R. 978, Defs.' Reply at 8.)

As for Denner's name appearing in the company stationery's footer and "Corporate Strategy" being listed as one of his responsibilities on Defendants' web site, Plaintiffs are grasping at straws.  This is unlike other cases where the executive is portrayed in marketing materials as being "uniquely 'hands-on,'" *see In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385, 2014 WL 257566, at *2 (S.D. Ill. Jan. 23, 2014), or where evidence shows the executive had a substantial role in the specific decisions at issue, *see id.*; *Jung*, 242 F.R.D. at 485. Here, the mere appearance of Denner's name in a letterhead (alongside several other names, presumably board members) and the generic description of his role as board chairman of a large corporation are insufficient to justify taking his

7

deposition.  *See Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, No. 12-CV-2706 MJD/LIB, 2014 WL 5685463, at *3 (D. Minn. Sept. 24, 2014) (finding marketing brochure statements "generalized and vague, akin to statements attributable to any company's president and/or CEO regardless of his or her level of involvement").

Plaintiffs' argument based on the October 2015 press release also falls short. As discussed above, the court is not convinced that brake component safety is relevant to the issues in this case.  (See R. 951.)  Even if it were, it is unclear how Bosch GmbH's public statements on the topic several months after Plaintiffs filed this lawsuit are relevant, and the court is not persuaded that Plaintiffs' evidence regarding the press release justifies Denner's deposition.  For all these reasons, the court agrees with Bosch GmbH that Denner's involvement with the issues in this case is minimal, if any, which favors granting a protective order.

**B.    Less Intrusive Means**

In support of its contention that Plaintiffs can obtain the information they seek using less intrusive means, Bosch GmbH points to the fact that Plaintiffs did not seek written discovery regarding Denner's alleged involvement in, or knowledge of, the acts giving rise to their claims.  (See id. at 10; R. 978, Defs.' Reply at 13.)  Bosch GmbH also names several of Defendants' current and former employees whose depositions are pending, who it contends were actually involved in the events at issue and can provide the information Plaintiffs seek.  (See R. 914, Defs.' Mot. at 10-11; R. 978, Defs.' Reply at 13-14.)   Plaintiffs argue in response that other

8

deponents are not on the Bosch GmbH board and cannot provide the same high-level information that Denner can. (See R. 961, Pls.' Opp. at 11-12.) But for reasons already discussed, Plaintiffs have not adequately explained why board-level testimony is relevant. At any rate, Plaintiffs themselves concede that completing depositions of lower-ranking Bosch GmbH employees first could result in more efficient depositions of higher-level witnesses later, if permitted. (See id. at 13.) The court thus agrees with Bosch GmbH that Plaintiffs should first seek testimony from other accessible deponents who are more likely to have relevant information than Denner.

## C.     Burden on Denner

Finally, Bosch GmbH argues that a deposition would be unduly burdensome for Denner given his busy schedule and would be "extremely disruptive" to his company obligations. (See R. 914, Defs.' Mot. at 13.) This is Bosch GmbH's weakest argument, betrayed in part by the fact that it occupies only one paragraph in Bosch GmbH's opening brief. (See id.) Indeed, many courts have given short shrift to arguments based on a high-ranking executive's self-described busyness. *See, e.g., Jung*, 242 F.R.D. at 486 ("As with the President of the United States . . . scheduling, not prohibition, accommodates and harmonizes the inevitably competing interests involved in discovery matters."); Johnston, *Apex Witnesses*, *supra*, at 4-5 (collecting cases). As hectic as an executive's schedule might be, "the hypothetical single parent could make a compelling argument that he is busier than the hypothetical chief executive officer[.]" Johnston, *Apex Witnesses*, *supra*, at 5.

The more important consideration, as discussed above, is the executive's knowledge of relevant information. Discovery has limits which "'grow more formidable as the showing of need decreases.'" *See Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting 8A Charles A. Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2036 (3d ed. 2012)). "[E]ven very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Id.* (internal quotations and citation omitted). Here, given Plaintiffs' inability to show that they need to depose Denner, the court finds that requiring him to provide testimony at this time would impose an undue burden. That being said, completely prohibiting a deposition is an extraordinary measure. *See* 8A Wright & Miller, at § 2037 n.5 (collecting cases). Should Plaintiffs develop additional evidence showing Denner's involvement with the relevant facts and issues in this case, the court will reconsider the need for this protective order.

## Conclusion

For the foregoing reasons, Defendants' motion for a protective order is granted without prejudice to Plaintiffs seeking leave to re-notice Denner's deposition if and when they can demonstrate a need for his deposition.

ENTER:

Young B. Kim
United States Magistrate Judge