UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NUCAP INDUSTRIES, INC., *et al.*, | ) |
| Plaintiffs, | ) No. 15 C 02207 |
| v. | ) |
| ROBERT BOSCH LLC, *et al.*, | ) Judge Edmond E. Chang |
| Defendants. | ) |

**ORDER**

This is a long-running dispute between Nucap and Bosch about proprietary drawings of aftermarket brake pad components. In September 2019, the Court granted partial summary judgment in favor of Bosch. R. 1203.[1] Nucap now moves for reconsideration. R. 1207, Mot. Reconsideration. For the reasons explained below, the motion to reconsider is granted.

**I. Background**

This Order assumes familiarity with the previous Summary Judgment Order. R. 1203. But to provide some brief background, this case arose out of the breakdown of the business relationship between Nucap and Bosch.[2] Before the lawsuit, Nucap manufactured brake pad components and supplied them to Bosch. Bosch in turn used those components to construct finished brake pads, which it then sold to commercial

---

[1] Citations to the docket are indicated by "R." followed by the docket entry.
[2] "Nucap" refers to Nucap Industries, Inc. and Nucap US Inc., while "Bosch" refers to Robert Bosch LLC, Bosch Brake Components LLC, and Robert Bosch GmbH.

retailers. As part of this process, Bosch requested drawings of the brake pad components from Nucap. Bosch was given access to those drawings for the limited purpose of verifying that Nucap's components would work with Bosch's existing brake components before placing orders for actual parts from Nucap.

The relationship between Nucap and Bosch eventually deteriorated, and Bosch turned to alternative suppliers to source its aftermarket brake pad components. The problem was that Bosch allegedly used Nucap's proprietary drawings in order to quickly locate suitable replacement parts from those other suppliers. Nucap alleges that this ultimately caused Nucap to lose out on profits.

Based on these allegations, in 2015, Nucap sued Bosch for trade secret misappropriation, copyright infringement, violations of the Digital Millennium Copyright Act (DMCA), tortious interference with contract, tortious interference with prospective economic advantage, unfair competition, and unjust enrichment. R. 239, First Am. Compl. ¶¶ 100-158. In response, Bosch asserted counterclaims for breach of contract, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, unjust enrichment, tortious interference with business expectancy, and breach of implied-in-fact contract and covenant of good faith and fair dealing.[3] R. 329, Answer and Counterclaims to First Am. Compl. ¶¶ 92-167.

The parties eventually filed cross-motions for summary judgment. In September 2019, both motions were granted in part and denied in part. In particular,

---

[3]Bosch also asserted counterclaims for federal and state antitrust violations, but those claims were dispensed with by the previously assigned judge at the motion-to-dismiss stage. *See* R. 713.

2

summary judgment was granted in favor of Bosch on Nucap's DMCA claim as well as on Nucap's trade secret misappropriation claim, but for *external* disclosures of the drawings only. (To the extent that the misappropriation claim relied on internal disclosures of the drawings, those portions of the claim survived summary judgment.) Finally, the Court also rejected Nucap's argument that Bosch had waived its rights under the Bosch Purchase Order Terms and Conditions. Nucap now moves for reconsideration of all three of those decisions.

## II. Legal Standard

Federal Rule of Civil Procedure 54(b) says that a court may reconsider an interlocutory ruling "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed R. Civ. P. 54(b). Motions for reconsideration serve the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). Thus, a motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (cleaned up).[4] But a motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

should have been presented to the district court prior to the judgment." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (cleaned up); *see also Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("[R]econsideration is not for rehashing previously rejected arguments.").

### III. Analysis

As a threshold matter, Bosch argues that the reconsideration motion should be denied as untimely. According to Bosch, Nucap did not file the motion until 51 days after the summary judgment decisions, which is later than what Bosch contends is a 30-day deadline. Bosch Resp. Br. at 4 (citing *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 2010 WL 4115427, at *6 (N.D. Ill. Oct. 18, 2010)).[5] The Court disagrees. The text of Rule 54(b) explicitly allows for reconsideration of interlocutory rulings "at *any time before the entry of a judgment* adjudicating all the claims and all the parties' rights and liabilities." Fed R. Civ. P. 54(b) (emphasis added). Moreover, given that this motion was filed well in advance of trial (and the trial date has since been vacated due to the pandemic), the Court accepts the motion to reconsider as timely filed.

#### A. Nucap's Affirmative Defense of Waiver

Turning to the substance of the reconsideration motion, Nucap first seeks to clarify that the Court did not *sua sponte* grant summary judgment in Bosch's favor on Nucap's affirmative defense of waiver, which Nucap asserted against Bosch's continued-supply counterclaim. Mot. Reconsideration at 2. To provide some

---

[5]The case cited by Bosch addresses motions for entry of final judgment under the first sentence of Rule 54(b), not motions for reconsideration, which are governed by the second sentence of Rule 54(b).

4

background, Bosch initially argued that its use of Nucap's drawings was acceptable under Bosch's purchase-order Terms and Conditions (POTC), which were printed on the purchase orders that Bosch sent to Nucap. R. 1115 at 13. Bosch then went even further and counterclaimed that, in fact, Nucap had breached the POTC, which provided for a continued-supply obligation, when Nucap stopped supplying parts to Bosch. *Id.* at 14. In response, Nucap argued that Bosch had waived its rights under the POTC to use the drawings. R. 1159 at 15-16. Nucap separately asserted waiver as an affirmative defense to Bosch's continuing-supply counterclaim. *Id.* at 16-17. Nucap addressed both of these waiver arguments in its original cross-motion for summary judgment. *Id.* at 15-17.

In the Summary Judgment Opinion, the Court held that "Bosch did not expressly waive its potential rights under the POTCs, nor is there a clear inference of an intentional waiver." R. 1203 at 15. Nucap is not seeking reconsideration of the holding as it relates to Nucap's argument that Bosch waived its rights to use the *drawings*. Mot. Reconsideration at 2. But Nucap believes that the Court "did not intend its ruling to apply to Nucap's separate *affirmative defense* of waiver to Bosch's *counterclaim* that Nucap owed Bosch a continuing supply obligation and breached that obligation." *Id.* Even though Nucap did technically seek summary judgment on Bosch's counterclaims based on an argument of waiver, *Bosch* never sought summary judgment on Nucap's affirmative defense of waiver. *Id.* So, argues Nucap, the Court could not have *sua sponte* entered summary judgment in favor of Bosch on the

5

affirmative defense. *Id.* at 3 (citing *Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 603 (7th Cir. 2015)).

Nucap also points out that the arguments for waiver of drawing rights are different from the arguments for waiver of supply rights. Mot. Reconsideration at 3. And according to Nucap, the Summary Judgment Opinion only discussed waiver in the context of Bosch's drawing rights, not the supply rights. *Id*. Nucap is technically correct in that the Court did include one sentence mentioning the "drawings" but did not otherwise discuss the supply rights. R. 1203 at 15. But beyond that one instance, the Court notes that the rest of the language in the Summary Judgment Opinion is not so narrowly cabined. Rather, the holding explicitly addresses "rights" in general, as opposed to "drawing rights." Indeed, the Court broadly concluded that "the parties' relationship is replete with fits-and-starts of both sides asserting various positions and rights, yet the parties' failure to agree on formal terms did not stop Nucap and Bosch from continuing—for years—their supplier-customer relationship. No reasonable jury could find that Bosch waived its alleged rights." *Id*. at 16. Because Nucap had the chance to flesh out both of its waiver arguments in its cross-motion for summary judgment, the Court's decision was meant to encompass both arguments in its rejection of "waiver" generally.

Having said that, however, the better course would have been for the Court to explicitly notify Nucap that it was considering the entry of summary judgment in favor of Bosch on Nucap's affirmative defense of waiver. So, out of an abundance of caution, this motion is granted: Nucap's affirmative defense of waiver is intact—for

6

now. But the Court invites Bosch to file a limited motion for summary judgment on the waiver affirmative defense only, because it is likely that much of the same evidence and arguments will apply. The motion must be filed by September 21, 2020 and must not exceed 10 pages. By October 13, 2020, Nucap shall respond in a response of no more than 10 pages. Bosch may reply by October 27, 2020. The Local Rule 56.1 statements must be very limited in light of the precise issue at stake.

### B. Nucap's Misappropriation Claim for External Disclosure

Nucap next moves for reconsideration of the entry of judgment in favor of Bosch on Nucap's trade secrets misappropriation claim, but only as it applied to the ostensibly narrow issue of Bosch's *external* disclosures of Nucap's drawings to third-parties. Mot. Reconsideration at 3. Specifically, the Court noted that "Nucap's expert did not allocate any of his damages calculation to the specific instances of external disclosure. As a result, no reasonable trier of fact could premise a damages award for Nucap on harm from disclosure of drawings to third parties." R. 1203 at 29. The rest of the misappropriation claim (premised on internal disclosures) was allowed to proceed to trial.

The problem, according to Nucap, is that this distinction between internal and external disclosures overlooks that the alleged misappropriation scheme depended on *both* internal and external misuse. Mot. Reconsideration at 3. Specifically, as Nucap tells it, Bosch improperly used Nucap's drawings to create the overlays in the first instance (internal misuse), but the whole point of creating the internal overlays was to send them to competitor-suppliers and ask those suppliers to conform their

7

products to Nucap's drawings (external misuse). *Id*. at 5. True, Nucap has so far only pointed to nine instances of external disclosure to competitors. But at least some of those instances enabled Bosch to actually place orders from competitor-suppliers after those suppliers conformed their products to the Nucap drawings, which in turn meant that Bosch did not need to purchase the parts from Nucap. *Id*. at 7-9. So, "orders…diverted from Nucap…on which Nucap should have earned, but did not earn, profits." *Id*. at 5. Nucap's motion makes clear that these so-called external disclosures form the basis for both unjust enrichment and lost-profits damages. *Id*.

This all makes sense now. Had Nucap framed the facts in this way during the initial rounds of summary judgment briefing, the Court would have understood Nucap's point and likely would not have split off and dismissed the external disclosure aspect of the claim from the rest of the misappropriation claim. But instead, what happened was that Bosch argued in its summary judgment motion that Nucap had identified only six instances where Bosch distributed Nucap drawings to third parties, and "Nucap's damages expert calculated damages based only on the *combined* misappropriation of hundreds of Nucap drawings allegedly misused by Bosch, not relating to the individual actions or drawings involved in the 6 instances." R. 1115 at 15. Bosch further argued that Nucap had not even produced "evidence to indicate that the third parties to whom Nucap information was allegedly provided either reviewed the information or modified their own drawings in light of the allegedly distributed Nucap information." *Id*. at 16. Nucap then failed to provide a robust response to Bosch's arguments. Instead, all Nucap argued in its cross-motion

8

for summary judgment was: "Bosch's request for partial summary judgment as to Bosch's disclosures of Nucap's drawings ... ignores the overlap between Bosch's overlay program and disclosure of Nucap drawings and overlays to third parties ... Bosch's cases are inapposite; they address *post-trial* motions by defendants claiming a lack of nexus between misappropriation and damages proved at trial." R. 1159 at 25. Nucap did not explain the "overlap" between the overlay program and disclosure to third parties. Bosch then picked up on this barebones argument, highlighting in its response brief that Nucap "does not dispute that there is no evidence to establish any required damage relating to the specific disclosures." R. 1163 at 17. *That* is what the Court based its ruling on—Nucap's failure to flesh out (or to even make in the first place) the argument that the internal misuse and external misuse were all part of the same scheme of wrongdoing, and thus, the damages from "external disclosure" are actually deeply intertwined with the misappropriation claim as a whole.

Unless the Court is misunderstanding Nucap's allegations yet again, these so-called external disclosure damages appear to be central to Nucap's case. It is thus unclear why Nucap did not press on this highly important point during the original rounds of briefing. This failure on Nucap's part could weight in favor of rejecting reconsideration, because a reconsideration motion is not meant to be a vehicle to "allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon*, 233 F.3d at 529. So, on that basis alone, the Court could deny the motion to reconsider this decision. At the same time, however, the Court places a premium on accuracy,

9

especially in the context of a jury trial. And blocking the external-disclosure aspect of the misappropriation claim would essentially make it much more difficult, if not impossible, for Nucap to accurately contextualize Bosch's internal misuse of Nucap's drawings for the jury. So, a balance must be struck.

What tips the scale (just barely) in favor of granting this motion is the fact that Nucap did embed three Rule 56.1 Statement citations in its original barebones response to Bosch's argument about the lack of external disclosure damages. R. 1159 at 25. Specifically, in support of its statement that there was an "overlap" between Bosch's overlay program and disclosure of Nucap drawings and overlays to third parties, Nucap cited to its responses to Bosch's Rule 56.1 Statement, in which Nucap explained that Bosch used the overlays to "confirm[ ] which competitor components would fit and function in the vehicle caliper and also fit Bosch's existing tooling" and "recommend[ ] changes to competitor drawings to conform them to Nucap's drawings." R. 1159-2 ¶ 69. Nucap also explained that "Bosch's overlay comparisons were intended to be used, and were used, to communicate proposed drawing changes to third party competitor suppliers and, in certain instances, were disclosed to those third party competitors…" *Id*. ¶ 72; R. 1164 ¶ 31. Although these facts still do not precisely address the specific *damages* related to the misappropriation claim, they do sufficiently illuminate Nucap's argument that external disclosure and internal disclosure were part of a single scheme, such that it would not make sense to divide one aspect of the claim from the rest of it. The better practice of course would have been for Nucap to explain these important points in its actual briefing. But the factual

citations at least ensure that this argument is not coming out of thin air, so reconsideration would not be improper here.

Although this is a close call, reconsideration is granted on this claim. Nucap will be allowed to present its trade secrets misappropriation claim to the jury in full. But going forward, Nucap will be provided no extra leeway to make new arguments that should have been fleshed out earlier in the litigation.

### C. Nucap's DMCA Claim

Finally, Nucap moves for reconsideration of the summary judgment decision against Nucap's claim under Section 1202(b) of the DMCA. Mot. Reconsideration at 9. Under Section 1202(b), Nucap must prove that Bosch (1) intentionally removed or altered copyright-management information (CMI) *and* (2) knew or had reasonable grounds to know that it would "induce, enable, facilitate, or conceal" copyright infringement. 17 U.S.C. § 1202(b).

The Court previously held that Nucap failed to offer enough evidence to allow a reasonable jury to find in its favor on the knowledge element of the Section 1202(b) claim. R. 1203 at 32. The Summary Judgment Order did acknowledge that Nucap pointed to "several statements from Bosch employees that allegedly show Bosch was aware its overlay process would infringe Nucap's copyright." *Id*. But the Court was skeptical that Bosch knew its overlay process constituted copyright infringement. For instance, the Court relied on Bosch's argument that the overlay process was conducted entirely internally, and Nucap's drawings were disclosed externally no more than nine times. *Id.* at 33. The Court additionally noted that there was "no

evidence Bosch's actions varied significantly from what it promised Nucap it would do" because "Bosch's emails show it was accommodating Nucap's requests about how its drawings were used." *Id*. at 34. And finally, the Court also mentioned that "Bosch was motivated *not* by an intent to infringe, but by a business necessity. *Id*. at 33.

Nucap now argues that it did present sufficient evidence on summary judgment "for a jury to find that Bosch knew or had reasonable grounds to know that its removal of CMI would induce, enable, facilitate, or conceal infringement." Mot. Reconsideration at 10. Most importantly, Nucap points to a March 2013 email from Bosch to Nucap in which Bob Wilkes, the Bosch representative, explained to Nucap "what we [Bosch] are doing to preserve the supplier drawing." *Id*. *See* R. 1122-9 at 2 (sealed).[6] Specifically, Wilkes forwarded to Nucap an email from Bosch's Senior Product Development Manager outlining the "guideline that should be adhered to…in regards to vendor drawings to avoid any copyright infringements." *Id*. (sealed). Attached to *that* email are several drawings showing what the overlay template would look like. For instance, there is a general "Vendor Drawing Guideline" that shows a generic "Vendor" drawing embedded in a larger Bosch template. *Id*. at 6. (sealed). The template clearly retains the "Vendor Title Block" in addition to a "Bosch Title Block." *Id*. (sealed). Similarly, another one of the attachments is an actual example of a Nucap-Bosch overlay. *Id*. at 3. (sealed). In that example, the smaller Nucap drawing is embedded within a larger Bosch information sheet; the smaller Nucap drawing is marked with a Nucap title block that also includes a "proprietary

---

[6]Although the exhibit itself is sealed, the quoted and cited information in this Order cannot be shielded from public view.

notice." *Id*. (sealed). Basically, what all this means is that Bosch communicated to Nucap in March 2013 that it would follow certain guidelines in order to avoid copyright infringement. Drawing all plausible inferences in favor of Nucap, one of those guidelines might have been to retain the original vendor copyright-management information even where Bosch was adding its own title block and its own CMI.

Related to this, Nucap points out that the Court was incorrect in noting that there was "no evidence Bosch's actions varied significantly from what it promised Nucap it would do." *See* R. 1203 at 34. According to Nucap, that fact is very much disputed; Bosch allegedly removed Nucap's CMI when it reproduced the Nucap drawings within its own templates, and that removal constituted a *substantial* departure from what Bosch promised Nucap it would do in the March 2013 email described above. Mot. Reconsideration at 14. Nucap also takes issue with the focus on the fact that Bosch was motivated by business necessity, rather than an intent to infringe. *Id*. at 13. As Nucap points out, Section 1202(b) only requires knowledge or awareness, not intent. *Id*.

On reconsideration, the Court agrees with Nucap. Drawing all reasonable inferences in favor of Nucap, there is a genuine dispute of fact when it comes to the question of whether Bosch knew that removing Nucap's CMI from its drawings as part of the overlay process could lead to copyright infringement. In particular, the Court is swayed by the March 2013 Wilkes email. Although the Court is not entirely convinced that Bosch's reproductions of Nucap's drawings within the larger Bosch

13

templates necessarily constituted copyright infringement, Nucap has identified a genuine dispute of material fact on this point. Specifically, it is reasonable to read the March 2013 email as an acknowledgement by Bosch that protecting against infringement would require printing two layers of CMI—both the original vendor CMI (in this case, Nucap's CMI) as well as Bosch's own CMI—onto each overlay template. And the early timing of the email matters. Assuming Bosch knew in March 2013 that protecting against copyright infringement would require retaining Nucap's CMI on the overlay templates, then by the time the parties' relationship broke down in November 2014, Bosch would have still known that removing Nucap's CMI from the overlay drawings could constitute copyright infringement. Of course, Nucap will ultimately need to prove that its drawings qualified for copyright protection in the first place in order to succeed on this claim. But at least for now, on the specific issue of the mental-state requirement of Nucap's DMCA claim, the motion to reconsider is granted.

## IV. Conclusion

For the reasons discussed above, Nucap's motion to reconsider is granted. Specifically, Bosch's prior partial summary judgment wins are vacated as to (1) the waiver affirmative defense; (2) Nucap's claim for trade secret misappropriation based on external disclosures; and (3) Nucap's DMCA Section 1202(b) claim. As explained earlier, Bosch may file a limited summary judgment motion against the waiver affirmative defense by September 21, 2020 (the motion is limited to 10 pages). By October 13, 2020, Nucap shall respond (limited to 10 pages). Bosch may reply by

October 27, 2020. Again, the Local Rule 56.1 statements must be very limited in light of the precise issue at stake.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 23, 2020